Testator did not stand in the "mutually acknowledged relation of parent" to a legatee, so as to exempt the legacy from taxation (Laws 1892, c. 399, § 2), where he did not support or educate her, and she was not in any way dependent on him, but he merely lived in the family of his sister, who was the legatee's mother, and contributed to the support of the family, in common with the other members thereof, including the legatee.[1]

Appraisal of the estate of Rodman C. Moulton, deceased, for taxation under the transfer tax law. From an order of the surrogate fixing the tax, the beneficiaries under the will appeal. Affirmed.

Frank Walling, for appellants.

TOMPKINS, S. Upon the report of the appraiser heretofore made an order was made by the surrogate adjudging the estate of the deceased, devised and bequeathed to Bessie H. Winter and Cornelia M. Steeb, liable to the tax imposed by the law taxing gifts, legacies, and collateral inheritances, on the ground that they were nieces of the testator, and that the property transferred to them by the will was subject to the tax of 5 per cent. From that order an appeal was taken by the persons above named to the surrogate, under the provisions of section 3 of chapter 399 of the Laws of 1892. It is claimed on behalf of the appellants that they are exempt under the provision of section 2 of the above-mentioned act, claiming that the testator "for not less than ten years prior to such transfer stood in the mutually acknowledged relation of a parent," and in support of that contention referring to the testimony given before the appraiser. The testimony relied upon in support of the claim of the appellants was given by Bessie H. Winter, one of the appellants, and Charles W. Miller. It appears from their testimony that since 1865 the testator had not resided with his wife and children, and, with the exception of an interval or two, he lived with his said nieces and their mother, who was a sister of the testator; that they lived together as one family; that the household expenses were met out of a common fund, to which each contributed. In 1888 their mother died, and, from that time to the death of the testator, Mrs. Steeb, one of the said nieces, had charge of the household affairs and domestic arrangements, and they continued thus to live together as one family down to the death of the testator. Bessie H. Winter, who was the younger of the two nieces, was employed in a New York office from the time she was 14 years of age, and from that time to the date of the testator's death contributed a share towards the household expenses. During the period from 1884 to 1888, while the decedent was away from home, the niece, Bessie H. Winter, attended to his business for him, such as col-

---

[1] The exemption in favor of persons to whom testator for 10 years had stood in the "mutually acknowledged relation of parent" was held in Re Hunt's Estate (Sup.) 33 N. Y. Supp. 256, to apply only to illegitimate children.

lecting rents, paying bills, etc., and she testified "that they consulted together about business matters in which each were interested." It also appears that during his sickness they cared for him; that at times he required a great deal of attention; that Mrs. Steeb would give him his medicine, and care for him during the day, and Miss Winter cared for him and watched at his bedside at night, she being absent at her business during the day. It does not appear that the decedent contributed anything towards the support or maintenance of his nieces further than he contributed his share towards the household expenses. On one occasion he advanced a sum of money to Bessie H. Winter for her use in some business venture, which sum she afterwards repaid to him. During all the time they lived together the household affairs were managed by these nieces and their mother. There is no evidence that the testator, ever called them his children, or spoke of them as his daughters, nor that they ever spoke of him as father, but that they always called him "uncle," although their relations were very close, and they appeared to be very much devoted to each other. The witness Miller, who was a neighbor, and visited frequently at their residence during the last two years of the testator's life, testified that the testator told him that Mrs. Steeb was in some way provided for by her marriage, and that he intended to take care of Miss Winter by his will, and the witness states the following conclusion: "From my experience and observation with the family of Mr. Moulton and his nieces, I should say that their relations were those ordinarily existing between father and daughters." This is substantially all the testimony given in support of the claim of the appellants. The testator, in his will, refers to the appellants as his nieces, and makes no mention of any other relation existing. By his will he devised and bequeathed all his estate, both real and personal, to his said nieces.

I am convinced, after a careful study of the evidence and an examination of the authorities, that the property transferred by the will is not exempt from taxation, and that the order should be affirmed. The purpose and intent of that part of section 2 of the transfer act which exempts property which passes to one who, for not less than 10 years prior to the transfer, stood in the mutually acknowledged relation of a child, was to include among those exempted persons who may not have been legally adopted, but nevertheless stood in the same relation as children, and were acknowledged and recognized as such. The word "acknowledged" would seem to indicate that it was necessary that the deceased person had held the person to whom the transfer was made out to the world as a child, or as one to whom he bore that relation, or that he treated and considered such a one as a child; and the word "mutually" would seem to require that such a relation was mutual, and that the character of the relation was reciprocal. However close the relations may have been, and however affectionate each may have been for the other, still the case would not come within the meaning of the statute, unless the relation was generally understood and acknowledged to be that of parent and child. While they all

lived as one household, and each assisted the other, and the greatest affection existed between them, from all the facts I am of the opinion that the relation of parent and child did not exist within the meaning and intent of the statute. These nieces did not leave their own parents, and go to the testator, nor were they taken from their home to his home, but continued always, until their mother's death, to reside with her in the house presided over by her. The testator did not take them into his family, and support, educate, and maintain them; but from the evidence it appears that when his wife deserted him he went to live with his sister, the mother of these nieces, who was keeping house, and in that manner became a member of their household, and thereafter contributed his share to the household expense, and during all the time that they lived together the household was managed by these nieces and their mother. He was their guest, an inmate of their home; and, while not dependent upon them for maintenance or attention, he received at their hands those attentions and that care which we would naturally expect from an affectionate sister and nieces. So far as the evidence shows, he made no sacrifice for them, did not support or educate them, nor were they in any sense dependent upon him. On the contrary, one of the nieces, Bessie H. Winter, from the tender age of 14 years to the time of the testator's death, worked in New York City, and supported herself.

The decision of the learned surrogate of Madison county, In re Spencer (Surr.) 4 N. Y. Supp. 395, is cited by counsel for the appellants in support of their claim. In that case the facts are quite different than the case at bar. There the beneficiary left her own home, and lived with and assisted her aunt for 28 years, was entirely supported and cared for by the testatrix, remained at home with her during all these years, not in the capacity of a servant or companion merely, but enjoying the same privileges and rendering the same service and bestowing the same care and attention as would a daughter, and the relations between the parties in that case were parental in their intent, character, and results. The relation which was created when the deceased sought a home with his sister, the mother of these two nieces, was continued down to the time of her death, which occurred in 1888; and if thereafter a new relation began between the nieces and the testator, it has not existed a sufficient length of time to entitle them to the exemption which they seek. The other cases cited by the counsel for the appellants are not at all parallel to this case. In the Butler Case (Sup.) 12 N. Y. Supp. 201, the person claiming the exemption was taken from a charitable institution, at the age of 2 years, under an agreement with the officers of the institution to adopt him as a son, and provide him a home; and the child was immediately taken into the family of the testator, where he resided down to the time of his death, a period of $11\frac{1}{2}$ years, during all of which time the boy was cared for, supported, and maintained solely by the testator, and treated in all respects as a son. He was always spoken of by the testator and all the members of his family as a child, and he was held out to the world as a child of the testator, and supposed himself to be such, and did not know to the contrary

until after the death of the testator. Six years after he was taken from the institution, he was formally and legally adopted by the testator, with the consent of his wife, under and in pursuance of the laws of the state of Massachusetts, which were shown to be substantially the same as our own statutes on that subject. It seems that there could have been no other conclusion in that case but the one found, namely, that the mutually acknowledged relation of parent and child did exist, within the meaning of the statute. There, there was correlation and interdependence, but in the case at bar there was absolutely no dependence by the nieces upon their uncle for support, care, or protection. In Re Capron's Estate (Surr.) 10 N. Y. Supp. 23, the testatrix was the stepmother of those who claimed exemption, and had presided over their home, cared for them from their youth, looking after their education, training, deportment, and clothing, and performed all those offices which it were possible for a mother to perform, by reason of having assumed the charge and care of them by her marriage to their father. The case nearest parallel to the case before us is In re Sweetland's Estate (Surr.) 20 N. Y. Supp. 310. In that case an aunt of the beneficiary resided with her sister's family without payment of board or rent, the sisters being cotenants; and petitioners, after the death of their mother, worked the farm, which all had lived upon; and it was held that this did not establish the relation of parent and child between the petitioners and the aunt, so as to exempt the petitioners of the payment of a tax on a legacy from her. In the various cases decided in which it has been held that transfers were exempt because the mutually acknowledged relation of parent and child existed, the children were taken into the family of the deceased, and were made members of the family, and lived and grew up as members of the family, and were recognized and considered as such. The fact that Bessie H. Winter repaid to the testator the money which he at one time advanced to her for use in a business venture is not any proof of the existence of a filial relation, but, on the contrary, the repayment of the money is some evidence that such a relation did not exist, and that it was regarded as a purely business transaction. The order should be affirmed. Order affirmed.