**In the Matter of the ESTATE OF
Lawrence MAY, Deceased.**

**No. 13878.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 15, 1983.

Decided March 30, 1983.

David R. Gienapp of Arneson, Issenhuth
& Gienapp, and Carl E. Bohn, Madison, for
appellants First Northwestern Trust Co.
and William Doblar.

John Dewell, Asst. Atty. Gen., Pierre, for appellee South Dakota Dept. of Revenue.

HENDERSON, Justice.

## ACTION

Decedent Lawrence May died on February 17, 1981. Appellant William Doblar, a nephew of decedent, was an heir under decedent's will of property valued at $297,-475.41. When the South Dakota Inheritance Tax return was filed, appellant requested classification as decedent's son for tax purposes pursuant to SDCL 10–40–23(3). Appellee South Dakota Department of Revenue refused to grant appellant's requested exemption as a son. First Northwestern Trust of South Dakota, the executor of the estate, requested a hearing on the tax assessment. After a March 12, 1982, hearing, the trial court found the relationship between appellant and decedent did not comport with SDCL 10–40–23(3) and entered judgment in favor of appellee establishing a tax and determining appellant, for tax purposes, was not a son. We affirm.

## FACTS

In 1939, appellant, at age eight, began staying with decedent during the week apparently because the roads were in poor condition near appellant's father's residence and decedent could insure that appellant attended school in Madison, South Dakota. This arrangement continued until 1945. During appellant's stay with decedent, testimony established that decedent financed appellant's room and board and helped raise the boy. Appellant's tuition was paid by his father, and appellant would go home on weekends to be with his family.

In 1945, appellant, age fourteen, moved home and entered a public high school. Appellant left school after one year. From 1945 to 1952, appellant worked in Madison and also for decedent. Appellant would stay at decedent's home from time to time. Appellant married in 1953, then entered the army for four months. After his army service, appellant returned to live and work on decedent's farm where appellant remained until decedent's death. Appellant and decedent engaged in a farming enterprise and had an extremely close relationship as uncle and nephew. In decedent's will, appellant was referred to as "my beloved nephew."

## ISSUE

DID THE TRIAL COURT ERR IN CONCLUDING THAT APPELLANT DID NOT STAND IN A MUTUALLY ACKNOWLEDGED RELATION OF PARENT WITH THE DECEDENT PURSUANT TO SDCL 10–40–23(3)?

## DECISION

■ We have yet to construe SDCL 10–40–23(3) which provides:

The following exemptions from the tax are hereby allowed:

\*     \*     \*     \*     \*     \*

(3) Property of the clear value of thirty thousand dollars transferred to each of the lineal issue of the decedent, or any child adopted as such in conformity with the laws of any state, or any child to whom the decedent for not less than ten years prior to such transfer stood in mutually acknowledged relation of a parent, if such relationship began at or before the child's fifteenth birthday and was continuous for ten years thereafter, or any lineal issue of such adopted or mutually acknowledged child[.]

New York's Collateral Inheritance Tax Act, 1885 N.Y.Laws ch. 483, *as amended* 1887 N.Y.Laws ch. 713; and 1892 N.Y.Laws § 2 ch. 399 provides the genesis for SDCL 10–40–23(3). Our statute builds upon its New York origins by requiring that the mutually acknowledged parent relationship begin before the claimant's fifteenth birthday and be continuous for ten years thereafter. For the exemption to apply, the relationship must be generally understood and acknowledged to be that of parent and child. *In re Moulton's Estate,* 11 Misc. 694, 33 N.Y.S. 578 (1895).

**580**

*In re Beach's Estate,* 154 N.Y. 242, 245, 48 N.E. 516, 518 (1897), provides an early interpretation of the "mutually acknowledged parent" requirement:

> The clause, we think, was intended to have a broader scope; to include, among others, those cases, not infrequent, where a person without offspring, needing the care and affection of some one willing to assume the position of a child, takes, without formal adoption, a friend or relative into his household, standing to such person in loco parentis or as a parent, and receives, in return, filial attention and service.

Both the decedent and claimant must view the relationship as that of parent and child. *Estate of Wilts,* 80 Cal.App.3d 599, 145 Cal.Rptr. 759 (1978). Objective factors that have been used to make a determination if the relationship exists include: a) A relationship by blood or marriage; b) The reception of the child into the home and treatment of the child as a member of the family; c) An assumption of responsibility for support beyond occasion of gifts and financing aid; d) An exercise of parental authority in discipline; e) Advice and guidance to the child; f) A sharing of time and affection. *Estate of Wilts,* 145 Cal.Rptr. 759. A sufficient relationship for the exemption does not arise by chance but is an intentional assumption by the decedent of the parent's role in providing for the child. *In re Teddy's Estate,* 214 Cal. App.2d 113, 29 Cal.Rptr. 402 (1963).

We do not hesitate to conclude that decedent and appellant remained close throughout decedent's life. The trial court found "Lawrence May and William Dobler lived, worked and played together and there existed a close relationship between the Uncle and the Nephew." SDCL 10-40-23(3) requires more than closeness. After reviewing the record and testimony below, we are unable to hold that appellant and decedent remained in a mutually acknowledged parent and child relationship for ten contin-

uous years. The trial court did not err in its ruling.

Affirmed.

All the Justices concur.