1996 SD 81

**GATEWAY 2000, INC., A Delaware Corporation, Plaintiff and Appellant,**

v.

**Daniel LIMOGES, in His Official Capacity as Sheriff of Union County, South Dakota, Defendant and Appellee.**

No. 19375.

Supreme Court of South Dakota.

Argued April 23, 1996.

Decided July 2, 1996.

Suzan E. Boden and Kent Vriezelaar, Vriezelaar, Tigges, Edgington, Rossi, Bottaro & Boden, Sioux City, IA, for plaintiff and appellant.

John P. Slattery, Union County State's Atty., Elk Point, for defendant and appellee.

SABERS, Justice.

[¶ 1] Gateway 2000, Inc. appeals from a denial of an injunction and a grant of declaratory judgment to the sheriff of Union County, South Dakota. We reverse and remand.

## FACTS

[¶ 2] Gateway is a corporation with its principal place of business in North Sioux City, Union County, South Dakota. Gateway manufactures and distributes personal computers throughout the world and employs more than 6000 people. Approximately 4000 of those employees work at the North Sioux City facility. The employees reside in Iowa, Nebraska and South Dakota.

[¶ 3] The sheriff comes to the Gateway facility in order to serve approximately thirty employees per week with civil process. The matters sought to be served upon Gateway employees are for the most part summonses, garnishments and executions based on judgments from South Dakota and neighboring states. In order to facilitate this service and cooperate with the sheriff, Gateway allows the sheriff to enter at the visitor's entrance. The sheriff advises the Gateway security staff of the names of individuals upon whom he seeks service of process. The employees are notified and informed that the sheriff is waiting at the visitor's entrance to serve papers on them. The employees have the option of going to the visitor's entrance to be served or remaining at their work station. Gateway management does not force its employees to accept service of civil matters. Each employee called for service of process results in approximately twenty minutes of lost productivity and sales to Gateway.

[¶ 4] The sheriff now demands entry and access to the employee work stations at Gateway. The sheriff has notified Gateway that any person who interferes or denies access to him or his deputies will be arrested,

charged and prosecuted for obstruction of justice. On one occasion, an employee refused to accept service at the visitor's entrance and the sheriff "inadvertently obtained access" to the employee's work station and served him in front of his co-workers. Gateway claims this causes undue disturbance and commotion in the private work areas.

[¶ 5] Gateway sued the sheriff in his official capacity and requested an injunction and declaratory judgment. Gateway alleged violation of its

> constitutional rights to be free and secure from unreasonable searches and seizures; its right to equal protection and due process of the law; and its right to privacy, all in violation of the First, Fourth and Fourteenth Amendments to the Constitution of the United States and Section 11, Article VI of the South Dakota Constitution.

The trial court denied the injunction and granted declaratory judgment to the sheriff, stating:

> The case law gives Fourth Amendment rights to a person's home and to a lesser extent to business premises. Primarily the right applies to an area where there is an expectation of privacy. These would include lockers, bathrooms, areas set aside for personal use, or business files. There is no such expectation demonstrated for areas where employees congregate or perform their work.

Gateway appeals.

[¶ 6] **1. Whether there is a justifiable expectation of privacy in Gateway's employee work area.**

[¶ 7] The Fourth Amendment to the United States Constitution protects the rights of people against unreasonable intrusions by the State. ."'[T]he security of one's privacy against arbitrary intrusion by the police' is fundamental to a free society and as such protected by the Fourteenth Amendment." *Frank v. Maryland,* 359 U.S. 360, 362, 79 S.Ct. 804, 807, 3 L.Ed.2d 877, 880 (1959) *overruled on other grounds by Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930, 935 (1967) (quot-

ing *Wolf v. Colorado,* 338 U.S. 25, 27, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782, 1785 (1949) *overruled on other grounds by Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961)). The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The South Dakota Constitution, Article VI, § 11, provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause supported by affidavit, particularly describing the place to be searched and the person or thing to be seized.

■ [¶ 8] The Fourth Amendment condemns "unreasonable searches and seizures" and protects two rights.

> *The first of these is the right to be secure from intrusion into personal privacy, the right to shut the door on officials of the state unless their entry is under proper authority of law.* The second, and intimately related protection, is self-protection: the right to resist unauthorized entry which has as its design the securing of information to fortify the coercive power of the state against the individual, information which may be used to effect a further deprivation of life or liberty or property.

*Frank,* 359 U.S. at 365, 79 S.Ct. at 808, 3 L.Ed.2d at 881 (emphasis added).

[¶ 9] The United States Supreme Court has held business premises are protected by the Fourth Amendment. *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 353, 97 S.Ct. 619, 629, 50 L.Ed.2d 530, 544 (1977) (citing *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967); *Go–Bart Importing Co. v. United States,* 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920)).

[¶ 10] Gateway concedes that the expectation of privacy in commercial premises is less than that in a person's home. *New York v. Burger,* 482 U.S. 691, 700, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601, 612 (1987). The United States Supreme Court "has recognized that a business, by its special nature and voluntary existence, may open itself to intrusions that would not be permissible in a purely private context," like administrative searches in a highly regulated business. *G.M. Leasing Corp.,* 429 U.S. at 353–54, 97 S.Ct. at 629, 50 L.Ed.2d at 544.

[¶ 11] Despite concerns over privacy, two state intrusions are traditionally sanctioned: police searches for evidence and administrative inspections. *Burger,* 482 U.S. at 699–700, 107 S.Ct. at 2642, 96 L.Ed.2d at 612. However, the United States Supreme Court stated an intrusion to secure financial records and automobiles to enforce tax laws "was not based on the nature of its business, its license, or any regulation of its activities," *G.M. Leasing Corp.,* 429 U.S. at 354, 97 S.Ct. at 629, 50 L.Ed.2d at 544, and "involves nothing more than the normal enforcement of the tax laws, and we find no justification for treating petitioner [business] differently [than a private person] in these circumstances simply because it is a corporation." *Id.* The Fourth Amendment prohibits intrusions into privacy, but allows special exceptions for gathering evidence and administrative inspections, presumably because of a proper state or federal interest in those activities. The sheriff admits he is not on the Gateway premises to enforce criminal law or to gather evidence for a criminal investigation, but claims his conduct is not a "search" within the meaning of the Fourth Amendment.

[¶ 12] Whether the Fourth Amendment applies depends on whether Gateway

> "can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action. This inquiry ... normally embraces two discrete questions. The first is whether the individual, by his conduct, has 'exhibit-

ed an actual (subjective) expectation of privacy,' [*Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507 [516], 19 L.Ed.2d 576 (1967) ]—whether, in the words of the *Katz* majority, the individual has shown that 'he seeks to preserve [something] as private.' The second question is whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as "reasonable,"' ... whether, in the words of the *Katz* majority, the individual's expectation, viewed objectively, is 'justifiable' under the circumstances. [*Katz*, 389 U.S. at 353, 88 S.Ct. at 512]."

*United States v. Knotts*, 460 U.S. 276, 280, 103 S.Ct. 1081, 1084–85, 75 L.Ed.2d 55, 61 (1983) (quoting *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226 (1979)).

[¶ 13] The first question is whether the individual has exhibited a subjective expectation of privacy. Gateway maintains an internal security department and prohibits access beyond the visitor center to members of the public for security and safety reasons. It compares its visitor center with the front porch of a home—a place where the sheriff can present himself and request that employees come to the door. Beyond that, Gateway asserts "there is a clear expectation of privacy[,] the threshold of which cannot be crossed or violated absent the consent of the owner, a valid warrant, or an exigent circumstance." We agree.

[¶ 14] The second question is whether society is prepared to recognize the individual's expectation of privacy as reasonable or justifiable under the circumstances. Gateway, like other businesses, has clearly-defined public areas. The employee work area is private. The United States Supreme Court held that entry for the purpose of checking for compliance with administrative regulations, without consent, upon the portions of commercial premises which are not open to the public requires a warrant. *City of Seattle*, 387 U.S. at 545–46, 87 S.Ct. at 1740–41, 18 L.Ed.2d at 947–48. The employee work area of Gateway is not open to the public and the closed door beyond the visitor center

creates a threshold which the sheriff cannot cross. It is clear that Gateway has a justifiable expectation of privacy in its employee work areas which are not open to the public.

[¶ 15] **2. Whether the sheriff can enter a business for the purpose of service of civil process on employees where there is a justifiable expectation of privacy.**

[¶ 16] The service of process in a *civil* action differs from that in a criminal action. South Dakota law provides that criminal service shall be executed by a law enforcement officer. SDCL 23A–2–7. The summons "shall be served ... by delivering a copy to [the defendant] personally or by leaving it at his dwelling house or usual place of abode with some person over the age of fourteen years then residing therein." SDCL 23A–2–9. The sheriff is also required to keep the peace and "must pursue and apprehend all felons, and must execute all writs, warrants, and other process from any court or magistrate which shall be directed to him by legal authority." SDCL 7–12–1.

[¶ 17] In certain criminal situations a sheriff is given greater powers than a civil process server. A law enforcement officer is given the authority to require citizens to aid him in making an arrest.[1] SDCL 23A–3–6. Also, a law enforcement officer with authority to make an arrest may "break open an outer or inner door or window of a dwelling house or other structure for the purpose of making the arrest if, after giving reasonable notice of his intention, he is refused admittance," *and* if the law enforcement officer has an arrest warrant or exigent circumstances exist which justify warrantless arrest. SDCL 23A–3–5. Law enforcement officers are given these special powers in order to make arrests in criminal cases. However, this case involves civil process, not a criminal arrest. Therefore, in this civil case, the sheriff cannot "claim the right to exercise the powers associated with the service of [a crim-

---

1. SDCL 23A–3–1 provides: "An arrest is the taking of a person into custody so that he may be  held to answer for the alleged commission of a public offense."

inal arrest warrant]." *Casselman v. State*, 472 N.E.2d 1310, 1312 (Ind.Ct.App.1985).[2]

[¶ 18] In *civil* matters, the sheriff is recognized as one of several types of process servers.

The summons may be served by the sheriff or a constable of the county ... or by any other person not a party to the action who at the time of making such service is an elector[3] of the state in which such service is to be made.

SDCL 15–6–4(c); *Mueller v. Zelmer*, 525 N.W.2d 49, 51 (S.D.1994). Private process servers exist. *See Mueller*, 525 N.W.2d at 51; *Schebo v. Laderer*, 720 F.Supp. 146, 148 (D.S.D.1989).

[¶ 19] The sheriff asserts that in serving civil process he is merely performing a ministerial act which could be accomplished by any other person, not a party to the pending action and entitled to vote in the state. We agree, but that fact supports Gateway, not the sheriff. When he is operating in the same capacity as a private process server, the sheriff only has the authority of a private process server. He has no authority to threaten Gateway management or employees with a charge of "obstruction of justice." Nor does he have authority to forcibly enter beyond the visitor entrance.

[¶ 20] Initially, it is important to note that the sheriff has made no argument that he attempted to and was unable to serve the employees at their homes, in public areas of Gateway other than the visitor center, like the parking lot, or in any other way. In this case, the sheriff has threatened Gateway management with arrest for obstruction of justice for failing to force employees to accept service of process and preventing his access to the employee work area. Obstruc-

tion of justice, a Class 2 misdemeanor, occurs when:

Any person who, after being *lawfully commanded* to aid any law enforcement officer in arresting any person or in retaking any person who has escaped from legal custody, or in executing any legal process, intentionally refuses, without lawful cause, to aid such officer....

SDCL 22–11–3.1 (emphasis added). The question is whether the sheriff has the authority to "lawfully command" Gateway employees to aid him.

As a general rule, under the common law an officer, in executing a civil writ or process, has no legal right or authority to break an outer door or other outside protection to a dwelling house or forcibly to enter a dwelling house for the purpose of executing a writ or process, even after request for and refusal of admittance. If he does so, the officer ordinarily commits a trespass which renders his subsequent acts unlawful and void.

70 Am.Jur.2d § 110 at 314. The sheriff cannot force another citizen to do that which he cannot do, that is, forcibly enter a private area to serve civil process. In this case, he cannot cause Gateway management or security to force the employee being served to accept service of process. The United States Supreme Court stated, in a discussion of municipal liability, that the Fourth Amendment rights of a physician had been violated when deputy sheriffs forced their way into his office to arrest two of his employees for failing to appear before a grand jury to testify against him. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452, 465 (1986).

[¶ 21] A defendant has the right to attempt to avoid service of process in civil

---

**2.** The United States Supreme Court notes special concerns in criminal cases:

"Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also of grave concern, not only to the individual, but to a society which chooses to dwell in reasonable security and freedom from surveillance. *When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a*

*judicial officer, not by a policeman or government enforcement agent.*"
*United States v. Knotts*, 460 U.S. 276, 282, 103 S.Ct. 1081, 1085, 75 L.Ed.2d 55, 62 (1983) (quoting *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948)) (emphasis added).

**3.** An "elector" is "a person qualified to register as a voter, whether or not such person is registered." SDCL 12–1–3(4).

matters. The Indiana Court of Appeals held a deputy sheriff cannot interfere with a citizen's right to be secure in his home in order to forcibly serve civil process. *Casselman,* 472 N.E.2d at 1318. In *Casselman,* a deputy sheriff forced his way into a home in order to execute a writ of attachment upon Casselman, who failed to appear in court. Casselman refused to let the deputy enter and attempted to close the door. Casselman was convicted of resisting law enforcement, which included forcibly resisting the officer while the officer was lawfully engaged in the execution of his duties. The *Casselman* court vacated his conviction and held the deputy was not "lawfully engaged" in the execution of civil process when he prevented Casselman from closing the door to his home. *Id.* at 1314.

[¶ 22] In *United States v. Olander,* 584 F.2d 876 (9th Cir.1978), the Ninth Circuit Court of Appeals considered whether service of civil process can violate Fourth Amendment rights and held that as long as there was no breaking or entering to serve the civil process, there was no violation.[4]

[¶ 23] "Breaking or entering" can be caused by the sheriff pushing his way past the blocked doorway of a home. The Court of Appeals of Michigan discussed sheriff's deputies attempting to serve civil process in *Remes v. Duby,* 69 Mich.App. 265, 244 N.W.2d 440 (1976). In *Remes,* deputies forced their way into a dwelling house after the door was opened to allow a resident of the house to enter. The deputies were told they could not enter, but pushed past the person attempting to close the front door, stating they could enter because they had papers. The trial court granted summary judgment because the door was already open

and the deputies did not break it down. The Court of Appeals reversed and stated:

> In ruling that nothing short of "breaking down a door" will satisfy the requirement of a showing of force, we believe the learned trial judge was in error. In *Stearns v. Vincent,* [50 Mich. 209, 15 N.W. 86, 91 (Mich.1883) ] it was stated:
>
>> The protection of the dwelling against entry for the service of process is in the outer door only, and it is optional with the owner *to take it by closing the door against the officer, or to waive it by allowing him to enter.* If the officer once gains entrance through the outer door *without force* or fraud, the privilege is gone, and he may force open any other door if necessary to make complete service of his process.

*Remes,* 244 N.W.2d at 442. The arrangement at Gateway is like the closed door. While the sheriff has access to the visitor center, the employee work area is like the dwelling house. If Gateway chooses, it can open its interior employee work area to the public and the sheriff, but once it "closes" that area to the public, the sheriff may not use force or threats to enter.

[¶ 24] In these circumstances, the sheriff's entry by force or threat of arrest to serve civil process would constitute "breaking or entering." A person who wishes to avoid service of civil process has the right to close the door to his home or to private areas of his business to keep a law enforcement officer out. *See Casselman,* 472 N.E.2d at 1313. The *Casselman* court continued:

> " '... A man's house is deemed his castle, for safety and repose to himself and family; but the protection and pose would be illusive and imperfect if a man were de-

---

4.  There is a material difference between boarding a boat for the purpose of searching it and proceeding to do so, which did not happen here, and boarding to serve civil process [an injunction], which did happen here. There is no violation of the Fourth Amendment when an officer comes upon private property to serve legal process, *so long as there is no breaking or entering of a dwelling or other building of a type protected by the Amendment.* There is no search or seizure in such a case. So here, merely boarding to serve process is neither a search nor a seizure, and no search

or seizure occurred after the boarding. *Coming onto the deck of the boats is like coming onto a lot where a house is situated, or onto the porch or landing of the house. Nothing in the Fourth Amendment prohibits handing process to a man, in a peaceable manner, on his property, including his boat. To hold that it does would be an extravagant extension of the Fourth Amendment.* United States v. Olander, 584 F.2d 876, 888 (9th Cir.1978) (emphasis added), *vacated on other grounds (determination of fishing rights),* 443 U.S. 914, 99 S.Ct. 3104, 61 L.Ed.2d 878.

prived of the right of shutting his own door when he sees an officer approaching to execute civil process. If the officer cannot enter peacefully before the door is shut, he ought not to attempt it, for this unavoidably endangers a breach of the peace, and is as much a violation of the owner's right as if he had broken the door at first.'"

Id. (quoting State ex rel. McPherson v. Beckner, 132 Ind. 371, 31 N.E. 950, 952 (1892) (holding the officer's conduct amounted to a trespass)).

[¶ 25] Our constitutions guard against those searches which are unreasonable. Although the sheriff argues his entry is reasonable, it is not reasonable to force his way into Gateway's private work areas in order to serve an employee who chooses not to accept service of process. An employee can close the door to his home to avoid a process server. He may also avoid civil process in the private areas of the Gateway facility. As an employer, Gateway does not give up its constitutional rights to maintain a private work area merely because it has incorporated. To hold otherwise would violate Gateway's right to privacy and freedom from unreasonable searches.

[¶ 26] For these reasons, the sheriff's actions in using force or threatening arrest were improper and violate Gateway's rights. Therefore, the trial court erred in refusing to grant injunctive relief. Accordingly, we reverse and remand for disposition consistent with this opinion.

[¶ 27] MILLER, C.J., and AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.

