# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

October 8, 2003

The Honorable Richard J. Miller
Bell County Attorney
P.O. Box 1127
Belton, Texas 76513

Opinion No. GA-0113

Re: Whether a refusal to permit a constable to enter the restricted area of a business in order to serve civil process constitutes an offense under section 38.16 of the Penal Code (RQ-0056-GA)

Dear Mr. Miller:

You inquire about the proper construction of section 38.16 of the Penal Code. That statute provides:

> (a) A person commits an offense if he intentionally or knowingly by words or physical action prevents the execution of any process in a civil cause.
>
> (b) It is an exception to the application of this section that the actor evaded service of process by avoiding detection.
>
> (c) An offense under this section is a Class C misdemeanor.

TEX. PEN. CODE ANN. § 38.16 (Vernon 2003).

You ask that we consider the statute in light of the following fact scenario:

> [A] constable sought to serve civil process on X at the corporation where X was an employee. The constable contacted the business's personnel director, who then went back into a restricted area of the business and advised X that the constable was there to serve him with the process. X declined to come out and accept the paperwork. When the personnel director advised the constable of this fact, he refused to allow the constable access into the company's restricted area to attempt to personally serve X. The constable went to a justice of the peace and swore out a complaint against the personnel director for the Class C misdemeanor offense of preventing execution of [civil] process under Penal Code Section 38.16 . . . .

> Once this came to my attention, I was of the opinion that the personnel director had not violated the statute, and the warrant was subsequently pulled.[1]

Your first question is whether the personnel director violated section 38.16(a) "by not allowing the constable to enter a business's restricted area to personally serve civil process to an employee who the personnel director had made aware of the constable's presence and who refused to come out and accept service." Request Letter, *supra* note 1, at 1. To the extent that the statute could be construed to apply to the fact situation you describe, such application would raise serious concerns under the Fourth Amendment to the United States Constitution.

The Supreme Court of South Dakota considered a situation very similar to the one you describe here. In *Gateway 2000, Inc. v. Limoges*, 552 N.W.2d 591 (S.D. 1996), a sheriff regularly traveled to the Gateway facility to serve its employees with civil process. The sheriff would enter the public area of the Gateway facility and advise the company's security staff of the names of individuals whom he sought to serve. After being notified and informed that the sheriff was waiting at the visitor's entrance to serve papers on them, the employees had the option of going to the visitor's entrance to be served or remaining at their work station. Gateway's policy was not to force its employees to accept service of civil matters; however, the sheriff in this case had started to demand "entry and access to the employee work stations at Gateway," and had notified Gateway that any person who attempted to interfere or deny access to him or his deputies would be "arrested, charged and prosecuted for obstruction of justice." *Gateway*, 552 N.W.2d at 592.

The court observed that "[t]he Fourth Amendment to the United States Constitution protects the rights of people against unreasonable intrusions by the State," *id.*, and that "[t]he United States Supreme Court has held [that] business premises are protected by the Fourth Amendment." *Id.* at 593 (citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 339 (1977)). Whether the Fourth Amendment applied to Gateway in this situation depended, first, on whether the company had exhibited, by its conduct, "an actual (subjective) expectation of privacy," *id.* at 594, and second, whether society could see this as a "reasonable" expectation. *Id.* (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967) (Douglas, J., & Brennan, J., concurring)). Gateway satisfied the first criterion because the company "maintains an internal security department and prohibits access beyond the visitor center to members of the public for security and safety reasons." *Id.* Gateway complied with the second criterion because it, like other businesses, "has clearly-defined public areas[, and] the employee work area is private." *Id.* "The United States Supreme Court held that entry for the purpose of checking for compliance with administrative regulations, without consent, upon the portions of commercial premises which are not open to the public requires a warrant." *Id.* (citing *See v. City of Seattle*, 387 U.S. 541, 545-46 (1967)).

The court also pointed out that service of civil process differs from service of criminal process. In a criminal case:

---

[1] Letter from Honorable Richard J. Miller, Bell County Attorney, to Honorable Greg Abbott, Texas Attorney General, at 1 (May 15, 2003) (on file with Opinion Committee) [hereinafter Request Letter].

A law enforcement officer is given the authority to require citizens to aid him in making an arrest[,] . . . [and] may "break open an outer or inner door or window of a dwelling house or other structure for the purpose of making the arrest if, after giving reasonable notice of his intention, he is refused admittance," *and* if the law enforcement officer has an arrest warrant or exigent circumstances exist which justify warrantless arrest.

*Id.* (citing S.D. CODIFIED LAWS § 23A-3-5). But when the sheriff "is operating in the same capacity as a private process server," he "has no authority to threaten Gateway management or employees with a charge of 'obstruction of justice,'" nor does he "have the authority to forcibly enter beyond the visitor entrance." *Id.* at 595. "The sheriff cannot force another citizen to do that which he cannot do, that is, forcibly enter a private area to serve civil process. In this case, he cannot cause Gateway management or security to force the employee being served to accept service of process." *Id.*

The court found that "[t]he arrangement at Gateway is like the closed door [of a private dwelling]. While the sheriff has access to the visitor center, the employee work area is like the dwelling house. If Gateway chooses, it can open its interior employee work area to the public and the sheriff, but once it 'closes' that area to the public, the sheriff may not use force or threats to enter." *Id.* at 596. The court concluded that both its state and the federal constitutions

guard against those searches which are unreasonable . . . . [I]t is not reasonable [for the sheriff] to force his way into Gateway's private work areas in order to serve an employee who chooses not to accept service of process. An employee can close the door to his home to avoid a process server. He may also avoid civil process in the private areas of the Gateway facility. As an employer, Gateway does not give up its constitutional rights to maintain a private work area merely because it has incorporated. To hold otherwise would violate Gateway's right to privacy and freedom from unreasonable searches.

*Id.* at 597.

The *Gateway* case, buttressed by ample United States Supreme Court precedent, is highly persuasive. It is, in addition, supported by two recent attorney general opinions from our sister states. In a 1999 opinion, the attorney general of Virginia, citing *Gateway*, said that "entering a business area where there is a justifiable expectation of privacy in order to serve process would be unreasonable under the Fourth Amendment." Op. Va. Att'y Gen. No. 32 (1999) at 2. The attorney general of Tennessee, also citing *Gateway* and *G.M. Leasing Corporation*, reached the same conclusion in 2001. *See* Op. Tenn. Att'y Gen. No. 01-149 (2001) at 1 (" A private business may refuse access to the private areas of its business property to a private process server or a sheriff who is attempting to serve civil papers, but may not refuse access to areas open to the public.").

When these principles are applied to the situation you pose, it is clear that, whatever the legislature's intent in enacting section 38.16(a) of the Penal Code, the statute may not, under the Fourth Amendment, validly be applied to an individual who refuses to permit a constable to enter the restricted area of a business for the purpose of serving process. We conclude that the personnel director in the scenario you have described cannot be convicted of violating section 38.16(a) of the Penal Code because, as applied to that situation, the statute contravenes the Fourth Amendment to the United States Constitution.

You also ask whether section 38.16 is "overly vague to the extent that it is not enforceable." Request Letter, *supra* note 1, at 2. The doctrine of void-for-vagueness, as applied to the states, is derived from the due process guarantees of the Fourteenth Amendment to the United States Constitution:

> A vague statute offends due process in two ways. First, it fails to give fair notice of what conduct may be punished, forcing people to guess at the statute's meaning and threatening to trap the innocent. Second, it invites arbitrary and discriminatory enforcement by failing to establish guidelines for those charged with enforcing the law, "allow[ing] policemen, prosecutors, and juries to pursue their personal predilections."
>
> To survive a vagueness challenge, a statute need not spell out with perfect precision what conduct it forbids. "Words inevitably contain germs of uncertainty." Due process is satisfied if the prohibition is "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with."

*Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 437 (Tex. 1998) (citations omitted). The courts of Texas have found that a regulation of the Liquor Control Board requiring licensed private clubs to provide "regular food service" and "complete meals" was not unconstitutionally vague, *Texas Liquor Control Board v. Attic Club, Inc.*, 457 S.W.2d 41, 45 (Tex. 1970); that a regulation of the State Board of Insurance, deeming a "pattern of action" as prima facie evidence of the violation of the regulation was not vague, *Nunley v. State Board of Insurance*, 552 S.W.2d 624, 630 (Tex. Civ. App.–Eastland 1977, writ ref'd n.r.e.); that a statute under which a nurse was disciplined for "unprofessional or dishonorable conduct which, in the opinion of the Board [of Nurse Examiners] is likely to injure the public" was not vague, *Murphy v. Rowland*, 609 S.W.2d 292, 297 (Tex. Civ. App.–Corpus Christi 1980, writ ref'd n.r.e.); and that ordinances or county regulations forbidding the owning or operating of a sexually oriented business without a license were not vague, *Mayo v. State*, 877 S.W.2d 385, 389 (Tex. App.–Houston [1st Dist.] 1994, no pet.), *State v. Garcia*, 823 S.W.2d 793, 799 (Tex. App.–San Antonio 1992, pet. ref'd), *Memet v. State*, 642 S.W.2d 518, 522-23 (Tex. App.–Houston [14th Dist.] 1982, pet. ref'd). Even in the criminal context, "[a] provision need not . . . be cast in terms that are mathematically precise; it need only

give fair warning of the conduct prescribed, in light of common understanding and practices." *Garcia*, 823 S.W.2d at 798.

It seems likely that an "'ordinary person exercising ordinary common sense'" will be able to "'sufficiently understand and comply'" with section 38.16(a) of the Penal Code. *See Benton*, 980 S.W.2d at 437 (citation omitted). In *State v. Oren*, 647 A.2d 1009 (Vt. 1994), the Supreme Court of Vermont considered a case in which a defendant was charged with "impeding a public officer" who was attempting to serve civil process. *Oren*, 647 A.2d at 1011. The court described what occurred as follows:

> Defendant drove up in a pickup truck and parked so as to block the deputy's exit, and then ran toward the deputy's car. Screaming obscenities, defendant accused the deputy of trespassing and demanded identification. The deputy explained that she was there to serve process on defendant and her husband, and produced her badge and identification. Defendant tried to grab the badge, and told her husband to call the Northfield police. Defendant then went into her house. The deputy became fearful and tried to maneuver around defendant's truck, but succeeded only in getting her car stuck in a snowbank. Defendant then reappeared, screamed accusations that the deputy had hit her truck, and pounded on the hood and windshield of the cruiser.
>
> The police arrived one-half hour later and helped the deputy extricate the cruiser. The deputy followed the police out the driveway, stopping before she reached the road. She placed the papers on the ground and announced that the Orens had been served. Defendant drove up from behind, ran to the cruiser, and as the deputy was driving through the gate, defendant pushed the gate, hitting the side of the cruiser. Defendant then jumped on the hood of the cruiser and refused to get down. The deputy slowly drove through the gate, and defendant slid off the hood.

*Id.* at 1010-11. The court rejected the defendant's challenge to the statute on vagueness grounds, finding that "a person of ordinary intelligence should have understood that such behavior interfered with the officer's discharge of her duty." *Id.* at 1013.

An "'ordinary person exercising ordinary common sense,'" *see Benton*, 980 S.W.2d at 437 (citation omitted), would clearly understand that the kind of behavior described in *Oren* also constituted the offense of "prevent[ing] the execution of any process in a civil cause." TEX. PEN. CODE ANN. § 38.16(a) (Vernon 2003). As a result, we conclude that section 38.16(a) is not on its face void for vagueness.

Finally, we note that a civil process server need not enter the private area of a business in order to effectively serve process. Rule 106 of the Texas Rules of Civil Procedure provides that if a process server is unable to deliver a copy of the citation to a defendant in person or by mail, the process server may

> [u]pon motion supported by affidavit stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted [by personal service or by mail] at the location named in such affidavit but has not been successful, the court may authorize service (1) by leaving a true copy of the citation, with a copy of the petition attached, with anyone over sixteen years of age at the location specified in such affidavit . . . .

TEX. R. CIV. P. 106. In other words, if a process server determines that a defendant resides or works at a particular location, he or she may seek the court's authorization for citation under rule 106 and then leave the citation with any person over sixteen years of age at the described location. Under the facts you have described here, if the process server determines that an employee works at a particular company, he may serve that employee under rule 106 by leaving the citation in the custody of a person described in the rule.

## S U M M A R Y

A person does not "intentionally or knowingly by words or physical action" prevent "the execution of any process in a civil cause," TEX. PEN. CODE ANN. § 38.16(a) (Vernon 2003), by refusing to permit a process server to enter an area of his workplace that his employer has designated as "private," because in that context, section 38.16 contravenes the Fourth Amendment to the United States Constitution. Section 38.16 is not on its face void for vagueness.

Yours very truly,

GREG ABBOTT
Attorney General of Texas


BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee