GREAT FRAME UP SYSTEMS,
INC., Plaintiff,

v.

JAZAYERI ENTERPRISES, INC., a California corporation, Mohammad Z. Jazayeri, a/k/a D.J. Jazayeri, a/k/a Darvish J. Jazayeri, Mehdi Jazayeri, Mary Jazayeri, Mariam Jazayeri, and Islanders, Inc., a California corporation, Defendants.

No. 91 C 426.

United States District Court,
N.D. Illinois, E.D.

March 16, 1992.

Arthur T. Susman, Jeffery H. Fradkin, Georgia Vlahos, Robert E. Williams, Susman, Saunders & Buehler, Chicago, Ill., for plaintiff.

James Curtis Reho, Law Offices of James C. Reho, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Great Frame Up Systems, Inc. (GFU) seeks a preliminary injunction to prevent defendants from operating a picture-framing store in San Jose, California. Pursuant to a ruling in open court on December 20, 1991, this court denied plaintiff's motion for a preliminary injunction as to all defendants except Mohammad Z. Jazayeri, a/k/a D.J. Jazayeri. We requested supplemental briefing on the issue of choice of law, in light of a potential conflict between the application of Illinois law and a public policy of California reflected by section 16600 of the California Business and Professions Code (§ 16600). The determination of the choice of law is the only remaining issue. For the reasons below, we grant the motion for preliminary injunction against D.J. Jazayeri; we deny the motion for preliminary injunction against Islanders, Inc.

## BACKGROUND

The following is a brief summary of the facts necessary to our disposition of this motion. Jazayeri Enterprises, Inc. is a licensee and operator of a Great Frame Up franchise located in Irvine, California (Irvine franchise). Islanders, Inc. owns and operates Express Framing, a picture-framing store located in San Jose, California. Express Framing came into existence after the Irvine franchise was established. De-

fendant D.J. Jazayeri (D.J.) owns one-half of the shares of Jazayeri Enterprises and one-third of the shares of Islanders. Apart from this common ownership, Jazayeri Enterprises and Islanders are separate corporations. In connection with the opening of the Irvine franchise, D.J. signed certain agreements and a guaranty on behalf of Jazayeri Enterprises. The guaranty provided, among other things, that while the existing franchise was being operated the licensee would not acquire an interest in any independent picture-framing stores without the written consent of the licensor. Plaintiff seeks an injunction based on a breach of the restriction in the license agreement resulting from D.J.'s and Islanders' interest in Express Framing. This agreement has an express choice-of-law provision indicating that Illinois law is applicable. We have previously found that D.J. is in breach of the license agreement and, if Illinois law applies, he will be enjoined from retaining an interest in Express Framing.

*Choice of Law*

In this diversity action, this court must apply Illinois conflict-of-law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Illinois courts have adopted the Restatement (Second) of Conflict of Laws to resolve such issues. *See Nelson v. Hix*, 122 Ill.2d 343, 119 Ill.Dec. 355, 522 N.E.2d 1214 *cert. denied*, 488 U.S. 925, 109 S.Ct. 309, 102 L.Ed.2d 328 (1988); *International Surplus Lines Ins. Co. v. Pioneer Life Ins. Co.*, 209 Ill.App.3d 144, 154 Ill. Dec. 9, 13–14, 568 N.E.2d 9, 13–14 (1st Dist.1990). Where, as here, the contract contains an express choice-of-law provision, section 187 of the Restatement applies. *International Surplus Lines*, 154 Ill.Dec. at 14, 568 N.E.2d at 14; *Lyons v. Turner Constr. Co.*, 195 Ill.App.3d 36, 141 Ill.Dec. 719, 723, 551 N.E.2d 1062, 1066 (1st Dist. 1990). Under section 187 the parties' choice of law will govern unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) §§ 187(2)(a), (b). We will respect the parties' choice of law and not apply California law unless, among other things, the application of Illinois law is contrary to a fundamental California public policy represented by § 16600. Defendants argue that § 16600 does represent a fundamental California public policy and that the restriction in the license agreement clearly violates § 16600.

The relevant portion of § 16600 is as follows:

> Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.

*Cal.Bus. & Prof.Code*, § 16600. The first question we must ask is whether § 16600 represents a fundamental California public policy.

The forum will apply its own legal principles in determining whether a policy should be considered fundamental. Restatement (Second) § 187, comment g.

In conflicts of law cases, Illinois courts have held that the public policy considerations must be of a strong and fundamental nature to justify the rejection of the chosen law of the parties. A court should not refuse to apply the chosen law of another jurisdiction, however unlike its own, unless it is contrary to the public morals or natural justice, or unless the enforcement of it would be an evil example or harmful to its citizens.

*International Surplus Lines*, 154 Ill.Dec. at 15–16, 568 N.E.2d at 15–16. Another line of Illinois cases has set forth a more lenient standard for overriding an express choice-of-law provision. *See Lyons*, 141 Ill. Dec. at 722–23, 551 N.E.2d at 1065–66 (statute declaring certain acts "void as against

public policy" is sufficient to evince a fundamental public policy).[1]

California courts have held that § 16600 represents a strong public policy. *See Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal.App.3d 668, 97 Cal. Rptr. 811, 814 (1st Dist.1971); *Scott v. Snelling & Snelling, Inc.*, 732 F.Supp. 1034 (N.D.Cal.1990) (holding that post-termination restrictive covenant was void, overriding the parties' choice of law because of strong public policy underlying § 16600). Even plaintiff does not dispute that a violation of § 16600 would implicate a fundamental policy of California. Plaintiff does, however, maintain that the restriction at issue here does not violate § 16600 and thus application of Illinois law is not contrary to a fundamental public policy. Because of the interpretation of § 16600 by California courts, and because of the wording of the statute itself, we will assume, for purposes of Illinois conflict-of-law analysis, that *violations* of § 16600 implicate a fundamental public policy of California.

California courts have not evidenced complete agreement on the scope of application of § 16600. The wording of the statute is facially unambiguous, as noted by one California district court. *Scott*, 732 F.Supp. at 1040 ("A simple reading of this statute, giving the words their ordinary meaning, demonstrates that the California state legislature intended section 16600 to apply to any sort of contract which contains a covenant restraining competition."). Despite this simple reading, the *Scott* court acknowledged that California courts have held that only restrictive covenants that prevent one from engaging in an *entire* profession, trade or business are void under the statute. *Id.* at 1042; *see also Boughton v. Socony Mobil Oil Co.*, 231 Cal.App.2d 188, 41 Cal.Rptr. 714, 716 (2d Dist.1964); *Campbell v. Board of Trustees*, 817 F.2d 499, 502 (9th Cir.1987).

Plaintiff argues that California courts draw a distinction between in-term restrictions and post-term restrictions, finding the latter and not the former void under § 16600. Using this reasoning, the restriction at issue here, preventing defendants from competing only *during* the term of the existing franchise agreement, would not be void. Several California cases support this position. *See Dayton Time Lock Service, Inc. v. Silent Watchman Corp.*, 52 Cal.App.3d 1, 124 Cal.Rptr. 678, 681–82 (2d Dist.1975) (agreeing with defendant that "the post-franchise anti-competitive provision of the agreement violates antitrust laws (Bus. & Prof.Code, § 16600) ..." but "the anti-competitive clause remains in effect during the life of the franchise [footnote omitted] and the territorial limitations imposed on plaintiff's business are valid."); *Webb v. West Side District Hospital*, 144 Cal.App.3d 946, 193 Cal.Rptr. 80, 83 (2d Dist.1983) (validity of exclusive dealing contracts is to be measured by a reasonableness standard).[2] One unpublished Ninth Circuit case also supports the in-term/post-term distinction:

California cases clearly establish that contractual prohibitions against current employees' competing with their employers do not violate section 16600. *See, e.g. Fowler*, 196 Cal.App.3d 34, 44 (1987). The reasoning of those cases applies equally to supplier-distributor relationships such as that between Giddens and Shaklee, and Giddens has provided no authority suggesting otherwise. The re-

---

1. Most, if not all, Illinois cases encounter the choice-of-law issue under section 187 only in situations where Illinois public policy needs to be analyzed to determine whether the choice of some other state's law should be overridden. We have found only one case addressing the situation where an Illinois court might be required to analyze non-Illinois public policy. *Newman–Green, Inc. v. Alfonzo–Larrain R.*, 605 F.Supp. 793 (N.D.Ill.1985). That case addresses whether "an Illinois court would defer to Venezuelan law on enforceability—*in spite* of the parties' choice of Illinois law—to protect a *Vene-* *zuelan* public policy." *Id.* at 798 (emphasis in original). The analysis under section 187(2)(b) should not depend on whether the court is faced with a fundamental public policy of the forum state or of some other state.

2. While *Scott*, 732 F.Supp. at 1042–43, does find that California courts do not generally apply a "rule of reason" under § 16600, it states that California courts may apply such a rule to only partial restraints on competition.

lationship between section 16600 and post-termination anti-competition agreements is less clear, but that issue is not presented here.

*Shaklee U.S., Inc. v. Giddens,* 934 F.2d 324 (table), 1991 WL 90003, * 3, 1991 U.S.App. LEXIS 11617, * 8–9 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 876, 116 L.Ed.2d 781 (1992). While the precedential value of *Shaklee* is questionable,[3] and the case does not concern restrictions in a franchise context, its reasoning is applicable here. In the *Fowler* case, cited by *Shaklee,* the court refused to apply § 16600 when an employee claimed he was fired in retaliation for seeking other employment. *Fowler v. Varian Associates, Inc.,* 196 Cal. App.3d 34, 241 Cal.Rptr. 539 (6th Dist. 1987). It noted that no public policy permits an employee to help his employer's competitors and that "[i]n its typical application, section 16600 invalidates certain far-reaching post-employment covenants not to compete." *Id.* 241 Cal.Rptr. at 545.

■ California courts are in general agreement that post-termination restrictions do violate § 16600. *See id.* at 545; *Bosley Medical Group v. Abramson,* 161 Cal.App.3d 284, 207 Cal.Rptr. 477, 480 (2d Dist.1984); *Scott,* 732 F.Supp. 1034. We have found no California case which specifically addresses whether an in-term franchise restriction is valid under § 16600. As discussed above, the standard for this determination is whether one is prevented from engaging in an *entire* profession, trade or business. The cases which draw the in-term/post-term distinction are consistent with this standard if one views an in-term restriction as only a partial restraint. Here, for example, D.J. is not prevented from engaging in his entire profession because, even without his interest

in Express Framing, he has the Irvine franchise as a profession. This reasoning is compelling even though "California courts have defined 'profession, trade or business' narrowly." *Campbell,* 817 F.2d at 502. We find that the restriction at issue here would not be void under California law[4] and, consequently, the application of Illinois law in this case is not contrary to a fundamental policy of California.

Though we find this provision is not void under California law, we recognize that this conclusion is not completely clear, in light of cases such as *Scott.* Whatever doubt exists, however, provides an additional basis for our holding. Our decision to apply Illinois law is strengthened by any uncertainty among California courts as to whether § 16600 applies in situations such as this one. Because California courts have not clearly declared whether or not "restraints" like this one are enforceable under § 16600, we think it prudent to hesitate before finding the application of Illinois law contrary to a fundamental California public policy. California courts have themselves "been cautious in blithely applying public policy reasons to nullify otherwise enforceable contracts." *Moran v. Harris,* 131 Cal.App.3d 913, 182 Cal.Rptr. 519, 522 (4th Dist.1982). Decisions to void contracts on public policy grounds should be free from doubt. *Id.* 189 Cal.Rptr. at 522.

Because we have found that the application of Illinois law is not contrary to a fundamental policy of California, we need not analyze whether California has a materially greater interest in the outcome of this issue, nor whether California law would be the otherwise applicable law under section 188 of the Restatement.[5]

**3.** The *Shaklee* court indicated that the case is not appropriate for publication and may not be cited to or by the courts of the Ninth Circuit except as provided by Ninth Circuit Rule 36–3.

**4.** We note that some California cases do not fit neatly into this framework. *See, e.g., LaFortune v. Ebie,* 26 Cal.App.3d 72, 102 Cal.Rptr. 588 (2d Dist.1972). In *LaFortune,* a restriction by the franchisor on two existing franchises preventing either from delivering in the other's territory was held invalid as an antitrust violation. The

decision apparently rested on the Sherman Act as well as § 16600. The court primarily relied on the Sherman Act theory that a manufacturer may not exert control over a product once it has left the manufacturer's dominion.

**5.** Although enforcement affects the defendants solely in California, we do note the possible impact upon a national franchise system of the Illinois franchiser's inability to enforce in California the terms of a franchise license which franchisees elsewhere are required to observe.

### Who Should Be Enjoined

 Because Illinois law applies, we will enforce the agreement between the parties. As discussed above, on December 20, 1991 this court denied plaintiff's motion for preliminary injunction as to all defendants except D.J. However, in its supplemental briefs plaintiff continues to maintain that Islanders as well as D.J. should be enjoined from having an interest in Express Framing. Plaintiff's theory is that Islanders has been controlled by D.J. "as the vehicle for operating Express Framing" (pltf's mem. at 11).[6] Defendants, on the other hand, argue that if anyone is to be enjoined, it should only be D.J., because D.J. is the only party bound by the agreement with Great Frame Up. We agree with defendants. The problem is solved if D.J. no longer participates in the operation of Express Framing or as a shareholder of Islanders.

The only case cited by plaintiff to justify enjoining Islanders is *KFC Corp. v. Duncan*, Bus. Franchise Guide (CCH) ¶ 8924 (W.D.Ky.1987). Even if we were bound to follow this case, we find it distinguishable from the present situation. The court in *KFC* enjoined a corporation from operating a competing franchise on the theory that the corporation was the alter ego of defendant. Though the defendant apparently did not own an interest in the enjoined corporation, the corporation leased franchises from a corporation in which the defendant did have an interest. In *KFC*, the scenario was arranged by the defendant to avoid the terms of the franchise agreement. Unlike in *KFC*, there is no reason to believe that Islanders, without D.J., will be the alter ego of Jazayeri Enterprises or of D.J. himself.[7]

### CONCLUSION

Because application of Illinois law is not contrary to a fundamental California public policy, we apply Illinois law to this controversy. Therefore, we grant plaintiff's motion for a preliminary injunction against defendant D.J. Jazayeri; we deny the motion for a preliminary injunction against Islanders, Inc. D.J. is enjoined from continued participation in the Express Framing store. He is ordered, within a reasonable time, to sell or otherwise relinquish his interest in Islanders, Inc. and to refrain from retaining or obtaining any interest, either direct or indirect, in Express Framing.

---

6. In its supplemental brief, plaintiff summarizes D.J.'s involvement with Islanders and with the creation and operation of Express Framing.

7. If, as plaintiffs argue, no other shareholders of Islanders "have the interest or the ability to operate the Express Framing store on a full-time basis" (pltf's reply at 7), then perhaps Express Framing will not survive. Should that be the case, we doubt plaintiff would complain. In any event, we leave the fate of Islanders and Express Framing to the remaining shareholders.