1998 SD 87

**COMMUNICATION TECHNICAL SYSTEMS, INC., a Georgia Corporation, Plaintiff and Appellant,**

v.

**Rickey Lamar DENSMORE and Gateway 2000, Inc., a South Dakota Corporation, Defendants and Appellees.**

Nos. 20234, 20258.

Supreme Court of South Dakota.

Argued April 29, 1998.

Decided Aug. 5, 1998.

Rehearing Denied Sept. 9, 1998.

Thomas K. Wilka of Hagen, Wilka & Archer, P.C., Sioux Falls, for plaintiff and appellant.

Mark V. Meierhenry of Danforth, Meierhenry & Meierhenry, Sioux Falls, for defendant and appellee, Densmore.

Cheryle Wiedmeier of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellee, Gateway 2000.

GILBERTSON, Justice.

[¶ 1.] Communication Technical Systems, Incorporated, (CTS), appeals from the grant of summary judgment in favor of Rickey Densmore (Densmore) and Gateway 2000, Incorporated, (Gateway), in an action based upon Gateway's hiring of a former CTS employee, Densmore, as a computer programming consultant. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] Densmore began his career with CTS in 1992 as manager of its Programming Services Department in Georgia. On July 11, 1994, CTS entered into an agreement to provide programming services for Gateway. This agreement was confirmed by a written purchase order. CTS then sent Densmore to Chicago, Illinois to work with Gateway's accountants. Two to three weeks later, Densmore was sent to Gateway's South Dakota production site where he worked with Ken Mink (Mink), another CTS employee.

[¶ 3.] During September, 1994, Gateway wrote a letter to CTS memorializing a discussion between them concerning Mink and Densmore where CTS agreed: (1) Gateway could interview Mink for possible employment; (2) Densmore would continue to program for Gateway through November 30, 1994; (3) Gateway had the option of declaring the services offered under the July 11, 1994 purchase order completed or could extend those services; and (4) Gateway would give a 30–day notice before ending CTS's services. In September, 1994, Mink left CTS and began working for Gateway.

[¶ 4.] On September 30, 1994, Gateway entered into a written agreement, provided by CTS, entitled "Agreement Not to Recruit" (Agreement). Gateway agreed that during the time CTS was providing services for Gateway and for a period of one year following the termination of such services, Gateway would not hire, solicit, or recruit *any* CTS employee or encourage another to do the same without written approval by CTS.

[¶ 5.] During December, 1994, Densmore became unhappy with CTS for several reasons including, social conduct of some of the senior management, compensation issues, substantial travel requirements, and his Georgia office had been taken away. Densmore then had a conversation with Leon Tibbet of Gateway who told him to "go talk to legal services" and see if there was any reason Densmore could not come work for Gateway. Densmore stated he went to the legal department where he was told, "Gateway has an agreement with [CTS] not to hire any of you people away, so we don't want to even talk to you."

[¶ 6.] On December 15, 1994, Gateway gave 30 days' notice of termination of the purchase order with CTS. On January 20, 1995, Densmore resigned from CTS. That same day, Densmore wrote a letter to Gateway informing them he was available for employment, through his business entitled Corinium Consulting Incorporated, and that he was "bound by no previous contracts with CTS with regards to clients, services, disclosure, or any other limitation." On January 23, 1995, Gateway issued a purchase order to Corinium Consulting Inc. Densmore then performed services for Gateway for approximately five months in both South Dakota and Illinois.

[¶ 7.] On June 27, 1996, CTS brought suit against Gateway and Densmore: (1) seeking a declaratory judgment on the validity of the agreement not to recruit; (2) claiming Gateway breached its contract with CTS and tortiously interfered with CTS' employment relationship with Densmore; and (3) that Densmore had tortiously interfered with CTS' contractual relationship with Gateway by accepting employment with Gateway to perform the same services he had performed while working with CTS. Densmore counterclaimed that CTS tortiously interfered with his business relationship with Gateway when CTS sued Gateway [1] and him in both South Dakota and Georgia in retaliation for his leaving CTS. Gateway cross-claimed against Densmore for negligent misrepresentation,

1. Gateway was dismissed from the Georgia action on November 30, 1995, after the court concluded it lacked personal jurisdiction. The parties have stipulated that South Dakota provides the proper choice of law.

fraudulent misrepresentation, contribution, and indemnity.

[¶ 8.] Gateway, CTS, and Densmore each made motions for summary judgment. The circuit court granted the motions of Densmore and Gateway for summary judgment in which it concluded the Agreement was not enforceable under SDCL 53–9–8, *infra.* The circuit court did not rule on Densmore's counterclaim against CTS. CTS appeals raising the following issues:

1. Whether SDCL 53–9–8 renders the agreement not to recruit unenforceable.
2. Whether summary judgment against CTS was proper on the breach of contract claim by CTS against Gateway.
3. Whether summary judgment was proper against CTS on its tortious interference claims.

[¶ 9.] Gateway, by notice of review, raises the following issues:

4. Whether the agreement not to recruit is unenforceable as an unreasonably overbroad prohibition against hiring, as well as soliciting or recruiting any CTS employee.
5. Whether the agreement not to recruit is unenforceable as an unreasonably overbroad prohibition against advising or encouraging any other person or organization to hire, solicit, or recruit any CTS employee.
6. Whether the agreement not to recruit is unenforceable because Densmore did not have a non-competition agreement with CTS.
7. Whether the agreement not to recruit is unenforceable under federal antitrust law.

## STANDARD OF REVIEW

[¶ 10.] Our standard of review for summary judgment is well-established:

In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Specialty Mills v. Citizens State Bank,* 1997 SD 7, ¶ 7, 558 N.W.2d 617, 620 (quoting *Lamp v. First Nat'l Bank of Garretson,* 496 N.W.2d 581, 583 (S.D.1993) (citation omitted)). "The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law[.]" *Id.* (citation omitted).

## ANALYSIS AND DECISION

[¶ 11.] **1. Whether SDCL 53–9–8 renders the agreement not to recruit unenforceable?**

[¶ 12.] We have not previously had occasion to address an agreement not to recruit such as presented here. The circuit court concluded the agreement not to recruit at issue was but a variation of the more well known covenant not to compete which exists between an employer and employee. *See* SDCL 53–9–11, *infra.* The circuit court then ruled that enforcement of the agreement was prohibited under SDCL 53–9–8 which provides:

Every contract restraining exercise of a lawful profession, trade, or business is void to that extent, except as provided by §§ 53–9–9 to 53–9–11, inclusive.

[¶ 13.] SDCL 53–9–8 is generally denoted as a prohibition against agreements in "restraint of trade." However, its provisions are much broader as the statute actually prohibits any agreements which restrain "a lawful profession, trade or business." In applying the statute to a factual setting, we are called upon to analyze three criteria:

1. Does the conduct of the parties concern a "lawful profession, trade or business"?
2. If so, has there been a material restraint upon exercising that "lawful profession, trade or business"?
3. If so, is the conduct authorized by the statutory exceptions contained in SDCL 53–9–9, 53–9–10 or 53–9–11?

[¶ 14.] Gateway is engaged in the computer sales and service business. *See Gateway 2000, Inc. v. Limoges*, 1996 SD 81, ¶ 2, 552 N.W.2d 591, 592 (recognizing Gateway is a corporation with its principal place of business in North Sioux City which "manufactures and distributes personal computers throughout the world and employs more than 6000 people"). Densmore is in the business of providing specialized services to large manufacturers and marketers of computers. The agreement not to recruit clearly attempts to restrain Gateway's ability to seek suitable employees for its "business." It would also in reality restrain Densmore from working in South Dakota as the record identifies no other computer manufacturer of Gateway's magnitude in South Dakota which would require the expertise of Densmore.

[¶ 15.] Unless one of the following three statutory exceptions apply, the agreement is invalid under the general rule. Two of the exceptions to the general rule can be found in SDCL 53–9–9 (sale of good will) [2] and 53–9–10 (dissolution of a partnership). [3] Plainly, neither of these exceptions apply here. The final exception to the general rule prohibiting such restraints can be found under SDCL 53–9–11 which concerns an *employee's* covenant not to compete with his *employer.*

An *employee* may agree with an *employer* at the time of employment or at any time during his employment not to engage directly or indirectly in the same business or profession as that of his employer for any period not exceeding two years from the date of termination of the agreement and not to solicit existing customers of the employer within a specified county, city or other specified area for any period not exceeding two years from the date of termination of the agreement, if the employer continues to carry on a like business therein.

(Emphasis added). The circuit court compared the agreement not to recruit to a covenant not to compete and incorrectly decided the matter against CTS under the SDCL 53–9–11 exception. The agreement not to recruit was entered into by CTS and Gateway, not between CTS and Densmore. The plain language of the covenant not to compete section concerns agreements between employer and employee, not employers and their customers. As we stated in *Central Monitoring Service v. Zakinski*, 1996 SD 116, ¶ 9, 553 N.W.2d 513, 516, the exceptions listed in SDCL 53–9–8 "must be construed narrowly so as to promote the prohibition against contracts in restraint of trade." (citing *American Rim & Brake, Inc. v. Zoellner*, 382 N.W.2d 421, 424 (S.D.1986)). *See also De Smet Ins. of South Dakota v. Gibson*, 1996 SD 102, ¶ 7, 552 N.W.2d 98, 100 ("[T]he cardinal purpose of statutory construction—ascertaining legislative intent—ought not be limited to simply reading a statute's bare language; we must also reflect upon the purpose of the enactment, the matter sought to be corrected and the goal to be attained.") (citations omitted).

[¶ 16.] The same issue arose in *Dyson Conveyor Maint. v. Young & Vann*, 529 So.2d 212 (Ala.1988). Therein two companies entered into an agreement not to hire each others employees for a specified period. Dyson nevertheless hired one of Young's employees. Young sued per the agreement.

2. SDCL 53–9–9 provides:

Any person who sells the good will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or other specified area, as long as the buyer or person deriving title to the good will from the seller carries on a like business within the specified geographical area.

3. SDCL 53–9–10 provides:

Partners may, upon or in anticipation of a dissolution of the partnership, agree that none of them will carry on a similar business within the same city or town where the partnership business has been transacted or within a specified part thereof.

Dyson argued that the agreement was void under Alabama's restraint of trade statute.[4] In striking down the agreement as violative of the restraint of trade statute, the Court's reasoning justifies the same result concerning the facts and issues now before us:

> This does not mean that there is no field of operation for agreements such as that involved here. They can be enforceable, however, only to the extent that they supplement employer/employee contracts that are valid under [SDCL 53–9–11]. Thus, if [Densmore] had validly agreed with [CTS] not to compete with that company after he left its employ, and [CTS] and [Gateway] had appropriately entered into an agreement like the one at issue, then, when [Gateway] hired [Densmore], [CTS] could have sued not only [Densmore] for breach of *his* contract, but also [Gateway] for breach of *its* contract. In such a case, the no switching agreement would not restrain trade, because the employer/employee agreement, which is valid under [SDCL 53–9–11] would have already imposed the restraint. That is, once an employee enters with his employer into a partial restraint of his trade that would be allowed under [SDCL 53–9–8 & 11] ...., a no switching agreement would add no further restraint on that employee, and so would not violate [SDCL 53–9–8], at least with respect to him.

*Id.* at 215 (emphasis original).

[¶ 17.] A similar agreement was sought to be enforced in *Defco v. Decatur Cylinder, Inc.*, 595 So.2d 1329 (Ala.1992). There, the employer seeking enforcement argued that *Dyson* should be limited to those cases where the employee had no other employment opportunities in his profession other than the two employers who were parties to the contract. The *Defco* court rejected this rationale and held such contracts void per the applicable statutes, not because other employment might not be available.

[¶ 18.] SDCL 53–9–8 is a legislative determination of public policy. *American Rim & Brake*, 382 N.W.2d at 424. Thus, if the legislature decides to create another exception which would permit agreements not to recruit among competitors, it is its prerogative. Until such time, we decline to judicially create or broaden the existing exceptions to the general prohibition against contracts in restraint of trade. *See Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 756 n. 1 (S.D.1994) (noting that the Legislature is the final arbiter of public policy).

[¶ 19.] CTS improperly seeks the best of both worlds. Reserving its rights under the "at will" employment doctrine, it wants to be able to fire Densmore for any reason, arbitrary or otherwise, or for no reason at all. However, should Densmore seek employment or a consulting contract with a former customer, CTS wants that to be forbidden fruit even though Densmore never agreed to any such limitation. The legislature has given no hint that it intended to tip the scales so drastically in favor of an employer and against the employee in such an unfair manner. Neither should this be Court approved under the guise of statutory interpretation. The door entitled "at will" should swing both ways.[5] As such, while under these facts,

---

4. Ala.Code 1975 § 8–1–1 stated:
   (a) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind otherwise than is provided by this section is to that extent void.
   (b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein.
   (c) Upon or in anticipation of a dissolution of the partnership, partners may agree that none of them will carry on a similar business within the same county, city or town, or within a specified part thereof, where the partnership business has been transacted.

5. The dissent dismisses any consideration of the rights of Densmore with the observation that "[t]he fact that some outsider to the contract may be incidentally affected has no bearing in an action for breach of contract." Being effectively precluded from doing business in the entire state is hardly "incidentally affected." Beyond that, Densmore was no mere bystander, he was sued directly by CTS on the grounds he tortiously interfered with CTS's contractual relationship with Gateway. Furthermore, Densmore is seeking vindication of his rights by counterclaiming

CTS may experience disappointment concerning the lack of future employment of Densmore, its disappointment does not rise to the level of an invasion of its legal rights.[6]

[¶ 20.] The circuit court reached the right result for the wrong reason; that the agreement not to recruit was overbroad under SDCL 53–9–11. "This court has consistently held that where the trial court reaches the right result it will not be reversed even though based on erroneous conclusions or wrong reasons." *Owens v. City of Beresford,* 87 S.D. 8, 15, 201 N.W.2d 890, 893 (1972). The circuit court reached the right result.

---

against CTS that it tortiously interfered with his business relationship with Gateway when CTS *sued* Gateway and him in both South Dakota and Georgia in retaliation for his leaving CTS and entering into a consulting contract with Gateway.

6. The dissent claims the contract between Gateway and CTS is not an agreement in restraint of trade. The authority cited by the dissent is unpersuasive and in most cases inapplicable as it predominately concerns real estate contracts or the interpretation of *employment contract* provisions entered into between employers and their former employees which never existed in the case now before us. The dissent cites the case of *Board of Trade of City of Chicago v. United States,* 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918), where the United States Supreme Court upheld the Board of Trade's implementation of the "call rule" which required commodity bids to be fixed at the end of the trading day. Other than stating the obvious, that every trade agreement and regulation necessarily restrains trade to some extent, it has no further relevance.

Reliance upon *Lien v. Northwestern Engineering Co.,* 73 S.D. 84, 39 N.W.2d 483 (1949) is misplaced. In *Lien* the plaintiff contracted with ranchers for the exclusive right to mine and remove lime rock deposits for highway construction from the ranchers' land. Ranchers allowed lime rock to be removed from their land by another contractor. In upholding a jury verdict in favor of the plaintiff we noted that the agreement was a "restrictive covenant" upon realty and that SDC 10.0706 (now SDCL 53–9–8) did not apply; "[t]his statute is not relied upon by appellants, and a contention that the covenant herein is void as in violation of its terms would clearly be untenable." 73 S.D. at 91, 39 N.W.2d at 487. We went on to explain our reasoning as follows:

> Appellants [ranchers] in the instant case did not agree not to engage in the business of quarrying or selling rock, but only that they would not lease any contiguous or adjacent land 'to third parties for the production of sand or gravel, or other similar materials.' 73 S.D. at 93, 39 N.W.2d at 488.

The doctrine of reasonableness discussed by the *Lien* court was in the context of a restrictive covenant upon realty and as noted above, has nothing to do with SDCL 53–9–8. While a lime rock has no standing to complain who mines it, in our case, Densmore certainly has standing to complain when he is precluded from carrying on his profession in South Dakota because Gateway is the only computer manufacturer of a significant enough size in South Dakota to need his specialized services.

*Brookings Mall, Inc., v. Cpt. Ahab's Ltd.,* 300 N.W.2d 259 (S.D.1980), deals with a real estate lease in a mall. What limited relevance it has actually supports our result as it says a "restraint of trade by contract is generally illegal if [it] ... imposes undue hardship upon the restricted party;" in this case Densmore. *Id.* at 263. As *Brookings Mall* is a realty case, nowhere is there any mention of SDCL 53–9–8 or its statutory exceptions.

Further, the dissent relies on *Ward v. Midcom, Inc.,* 1998 SD 10, 575 N.W.2d 233, for the proposition that this Court could modify the agreement if the lack of territorial restrictions were greater than required to protect CTS. The *Ward* case dealt with a covenant not to compete between a former employee and employer. CTS is seeking to prohibit a former employee from working for a customer. Densmore was under no contract with CTS.

The remaining authority cited by the dissent is easily distinguished from the present facts. The authority relied upon by the dissent concerns a party to a *contract,* bringing suit upon that *contract,* against another party to the *contract.* *See Smith, Barney, Harris Upham & Co. v. Robinson,* 12 F.3d 515 (5th Cir.1994) (concerned an employer bringing an action against a former employee seeking preliminary injunction restraining him from soliciting employer's employees); *Campbell v. Trustees of Leland Stanford Jr. Univ.,* 817 F.2d 499 (9th Cir.1987) (developer of a vocational interest test brought suit against a former employer contesting validity of an anti-competition clause in employment agreement); *Loral Corp. v. Moyes,* 174 Cal.App.3d 268, 219 Cal. Rptr. 836 (1985) (former employer suing former employee for breach of noninterference agreement); *General Commercial Packaging v. TPS Package,* 126 F.3d 1131 (9th Cir.1997) (breach of contract action between contractor and subcontractor); *Scott v. Snelling and Snelling,* 732 F.Supp. 1034 (N.D.Cal.1990) (breach of contract action between franchisees and franchiser); *Great Frame Up Systems, Inc. v. Jazayeri Enterprises,* 789 F.Supp. 253 (N.D.Ill.1992) (breach of restriction in licensing agreement between licensee and licensor); As none of these cases concern attempts to bind parties not privy to a contract, this authority actually strengthens this Court's holding rather than undermines it.

**[¶ 21.] 2. Whether summary judgment was proper on the breach of contract claim against Gateway?**

[¶ 22.] As we have held the Agreement Not to Recruit was void under SDCL 53–9–8, we need not address this issue.

**[¶ 23.] 3. Whether summary judgment was proper against CTS on its tortious interference claims?**

[¶ 24.] CTS argues summary judgment was improper against both Gateway and Densmore on its claims of tortious interference with business relationships. We recognized the cause of action of tortious interference with business relationships or expectancies in *Tibke v. McDougall*, 479 N.W.2d 898 (S.D.1992). *Landstrom v. Shaver*, 1997 SD 25, ¶ 73, 561 N.W.2d 1, 16. We held the plaintiff must prove the following essential elements to prevail on such a claim:

1.  the existence of a valid business relationship or expectancy;

2.  knowledge by the interferer of the relationship or expectancy;

3.  an intentional and unjustified act of interference on the part of the interferer;

4.  proof that the interference caused the harm sustained; and,

5.  damage to the party whose relationship or expectancy was disrupted.

*Id.* (citing *Tibke*, 479 N.W.2d at 908; *Nelson v. WEB Water Dev. Ass'n, Inc.*, 507 N.W.2d 691, 699 (S.D.1993)).

[¶ 25.] CTS claimed Gateway tortiously interfered with its employment relationship with Densmore. The circuit court concluded CTS failed to establish the first element of this cause of action, the existence of a valid business relationship. We agree. As we have held the agreement not to recruit was void, the business relationship it sought to protect is not within the realm of protection afforded by this cause of action. The circuit court concluded Densmore was an at will employee prior to being employed by Gateway. CTS has failed to show otherwise. In *Defco,* the court dismissed the same type of

claim for the identical reason. 595 So.2d at 1332.

[¶ 26.] CTS also claimed Densmore tortiously interfered with its contractual relationship with Gateway by accepting employment with them and performing essentially the same services CTS had previously been contracted to perform. CTS correctly concedes that Gateway had the right to terminate its purchase order with CTS upon 30 days notice. The purchase order was fulfilled, Gateway provided adequate notice and subsequently hired CTS' former at will employee. Upon termination of the contract, Gateway was not contractually obligated to retain the services of CTS. Therefore, this claim must fail.

[¶ 27.] CTS states in its brief, "[c]onsulting firms such as CTS must be able to remedy the situation in which it trains its employees, introduces them to clients, and signs a written agreement with the client to not steal the employee, only to find that the employee has changed employers over the weekend." What CTS conveniently overlooks is that a remedy was available to them up to the moment Densmore left their employ. CTS could have taken preventative measures with Densmore, such as giving him the option of security of employment in return for a covenant not to compete, to alleviate its concerns. Instead, CTS sought to bind its employee through an agreement with a third party. As we have stated, this it may not do.

[¶ 28.] **The status of Densmore's counterclaim against CTS.**

[¶ 29.] The circuit court declined to rule on Densmore's counterclaim against CTS by explaining as follows:

However, the court is deferring any proceedings between CTS and Densmore on his counterclaim. There are issues between CTS and Densmore which are more properly settled in the Georgia court and decided under that state's laws and case precedents. The Georgia courts did not act upon that matter. But, the CTS corporation is in that state. Densmore resided there when the facts of the case were evolving and developing. Discovery has been completed to a great extent. The counterclaim by Densmore is an issue

unique to Georgia in this case as the vacation time accrued under an agreement signed in Georgia between CTS and Densmore and while Densmore worked there.

[¶ 30.] We need not address this aspect of the circuit court's decision as neither CTS nor Densmore challenged the circuit court's refusal to rule on Densmore's counterclaim. Densmore did not brief the issue and thus it is waived.

[¶ 31.] As we have held the Agreement was void under SDCL 53-9-8, we need not address the issues raised by Gateway by notice of review.

[¶ 32.] Affirmed.

[¶ 33.] AMUNDSON, J., concurs.

[¶ 34.] MILLER, C.J., concurs specially.

[¶ 35.] SABERS and KONENKAMP, JJ., dissent.

MILLER, Chief Justice (concurring specially).

[¶ 36.] I am deeply concerned with the precedent this case will set, because I think that two companies such as Gateway and CTS should be able to contract with one another to prevent their employees from being "raided." However, I cannot ignore the impact that this contract has on Densmore, and since there is no way to enforce the contract as between Gateway and CTS, but not between CTS and Densmore, I concur.

[¶ 37.] I believe that this is an area that is best left to legislative determination, and as this situation does not meet one of the statutory exceptions to SDCL 53-9-8, the contract in question is an unlawful restraint of a "lawful profession, trade, or business." The effect of the contract between CTS and Gateway is that Densmore is precluded from seeking employment in South Dakota. This is done even though CTS never signed a covenant not to compete with him. SDCL 53-9-11 allows for covenants not to compete under certain circumstances. It appears that CTS was hoping to gain the benefits of such a covenant without having to give anything up in return to Densmore. Such a sidestep of an area already considered by the legislature should not be tolerated.

[¶ 38.] The dissent cites to *Lien v. Northwestern Eng'g Co.,* 73 S.D. 84, 92, 39 N.W.2d 483, 487 (1949), for the proposition that SDCL 53-9-8 simply "eliminates from the controversy the question of reasonableness where a case falls within one of the exceptions." I respectfully disagree. The California case of *City Carpet–Beating, Etc., Works v. Jones,* 102 Cal. 506, 36 P. 841 (1894), the *Lien* majority was relying on had been repudiated. *See Lien,* 73 S.D. at 107, 39 N.W.2d at 495 (Hayes, J., dissenting). In *Merchants' Ad–Sign Co. v. Sterling,* 124 Cal. 429, 57 P. 468, 470 (1899), the California Supreme Court held that unless a contract restraining exercise of a lawful trade is incidental or ancillary to a transaction expressly excepted by statute from the general rule, the contract is void.

[¶ 39.] This notion that the old common law test of reasonableness has been specifically replaced by statute comports with our own statutory scheme. SDCL 53-9-8 provides that "*[e]very* contract restraining exercise of a lawful profession trade or business is void to that extent, *except* as provided by §§ 53-9-9 to 53-9-11, inclusive." (Emphasis added.) This statute is very clear and only provides for a few exceptions, none of which apply to the agreement between CTS and Gateway.

[¶ 40.] To that same extent, I do not read our decision in *Central Monitoring Service, Inc. v. Zakinski,* 1996 SD 116, ¶ 33, 553 N.W.2d 513, 518, the same as the dissent. *Central Monitoring Service* involved a covenant not to compete, and cited to the Restatement (Second) of Contracts § 188 to determine if such a covenant is unreasonably in restraint of trade. Section 188 states that it pertains to promises to "refrain from competition." I would submit that a test of reasonableness can apply to one of the statutory exceptions to SDCL 53-9-8, but not to other contracts in restraint of trade.

[¶ 41.] Finally, this is not a contract in "furtherance of trade." In *Great Western Distillery Products, Inc. v. John A. Wathen Distillery Co.,* 10 Cal.2d 442, 74 P.2d 745, 746 (1937), it was held that "courts will not hold to be in restraint of trade a contract between

individuals, the main purpose and effect of which are to promote and increase business in the line affected[.]" The court further held that a contract was not a restraint of trade even if it "in some theoretical way incidentally and directly restrict[ed] trade in such line." *Id.* I believe the effect on Densmore in the present case is more than "theoretical" or "incidental."

[¶ 42.] In *1st American Systems, Inc. v. Rezatto,* 311 N.W.2d 51, 57 (S.D.1981), we observed that agreements not to disclose information or not to solicit clients are not contracts in restraint of trade. However, we also held that a contract cannot prevent a former employee from "accepting" clients of his/her former employer. *Id.* at 59. This is because these clients are not parties to the contract and should be allowed to choose who they would like to do business with. That is similar to the attempt by CTS to prevent Densmore from seeking employment with Gateway, without ever contracting with him.

[¶ 43.] The legislature has spoken in this area. CTS should not be allowed to effectively preclude Densmore from *obtaining* employment in South Dakota, without complying with the relevant statutes. It should be up to the legislature and not this Court to decide as a matter of public policy whether the rights of companies, such as CTS, or employees, such as Densmore, should be protected.

SABERS, Justice (dissenting).

[¶ 44.] I dissent. The contract between Gateway and CTS is *not* an agreement in restraint of trade; on the contrary, it is an agreement in *furtherance* of trade—because without it, CTS was apparently unwilling to continue providing its services to Gateway.

[¶ 45.] "[T]he mere fact that some restraint results does not render a contract void[.]"

*Lien v. Northwestern Eng'g Co.,* 73 S.D. 84, 92, 39 N.W.2d 483, 488 (1949). "Every agreement concerning trade, every regulation of trade, restrains. To bind, to restrain, is of their very essence." *Board of Trade of City of Chicago v. United States,* 246 U.S. 231, 238, 38 S.Ct. 242, 244, 62 L.Ed. 683, 687 (1918); *see also Milton v. Hudson Sales Corp.,* 152 Cal.App.2d 418, 313 P.2d 936, 951 (1957) ("[N]early every business contract eliminates competition in the sense that it prevents other parties from coming into the transaction."); *Loral Corp. v. Moyes,* 174 Cal.App.3d 268, 219 Cal.Rptr. 836, 841 (1985) ("[R]easonably limited restrictions which tend more to promote than restrain trade and business do not violate the [restraint of trade] statute."); *Campbell v. Board of Trustees of Leland Stanford Junior Univ.,* 817 F.2d 499, 502 (9th Cir.1987):

> Even though the California Legislature rejected the common-law rule that "reasonable" restraints of trade are generally enforceable, it did not make all restrictions unenforceable. Section 16600 only makes illegal those restraints which preclude one from engaging in a lawful profession, trade, or business. Thus, the court in *Boughton v. Socony Mobil Oil Co., Inc.,* 231 Cal.App.2d 188, 192, 41 Cal.Rptr. 714, 716 (1964), stated that
>
> > while the cases are uniform in refusing to enforce a contract wherein one is restrained from pursuing an *entire* business, trade, or profession, as falling within the ambit of section 16600, where one is barred from pursuing only a small or limited part of the business, trade or profession, the contract has been upheld as valid.[7]

(Emphasis in original).

[¶ 46.] In *Loral,* 219 Cal.Rptr. at 840, a former employee contracted, among other

---

7. As noted by the majority opinion, this court has not previously construed an agreement not to recruit employees. SDCL 53-9-8 is patterned after Cal. Civ.Code § 1673, now codified at Cal. Bus. & Prof.Code § 16600. *See Lien,* 73 S.D. at 92, 39 N.W.2d at 487. While we are not bound by California court decisions under § 16600, we look to them for guidance. *Cf. In re Estate of Gossman,* 1996 SD 124, ¶ 8, 555 N.W.2d 102, 105 ("[*In re Estate of May,* 331 N.W.2d 578

(S.D.1983),] presented our first opportunity to construe this statute, and we looked to New York law for guidance, noting that New York statutes 'provided the genesis for SDCL 10–40–23(3).' "); *see also Kovarik v. American Family Ins. Group,* 108 F.3d 962, 965 (8th Cir.1997):

> Because North Dakota Century Code section 9–08–06 is derived from the same source as California Business and Professional Code section 16600 and uses nearly identical language,

**134**

provisions, not to interfere with his previous employer by "interfering with or raiding its employees[.]" When he breached the agreement by "raiding" employees, the employer brought suit against him. The court held that the agreement did not constitute a restraint on trade:

> The restriction presumably was sought by plaintiffs in order to maintain a stable work force and enable the employer to remain in business. This restriction has the apparent impact of limiting [employee's] business practices in a small way in order to promote [employer's] business. This non-interference agreement has no overall negative impact on trade or business. We hold that this contract, as construed, is not void on its face under [§ 16600].

*Id.* 219 Cal.Rptr. at 844. "Only restrictive covenants which prohibit an individual from pursuing an *entire* business, trade, or profession are invalid under section 16600." *General Comm'l Packaging, Inc. v. TPS Package Eng'g, Inc.*, 126 F.3d 1131, 1133 n. 1 (9th

> the North Dakota Supreme Court has stated that "California court decisions construing [this section], while not binding, are entitled to respectful consideration, and may be persuasive and should not be ignored."
> (Quoting *Werlinger v. Mutual Serv. Cas. Ins. Co.*, 496 N.W.2d 26, 30 (N.D.1993)); *see Lien*, 73 S.D. at 92, 39 N.W.2d at 487–88 (relying on California case law to interpret contract).

8. The majority opinion attempts to ignore *Lien* and to distinguish many of these other cases by stating they involve employment contracts not binding on persons not privy to the contracts. Therefore, the majority opinion accuses the dissent of attempting to create a new, non-statutory exception to the restraint of trade statute. "Horse feathers." In fact, California has no employment contract exception to § 16600, yet California courts routinely validate these contracts. This court has validated contracts alleged to be unreasonably in restraint of trade even though not addressed by SDCL 53–9–9 to –11. *See Brookings Mall, Inc. v. Cpt. Ahab's, Ltd.*, 300 N.W.2d 259, 263 (S.D.1980) (holding that restraint imposed on store by the terms of its lease with mall neither unreasonable nor in violation of public policy); *see also Lien*, 73 S.D. at 92–93, 39 N.W.2d at 488 (contract precluding lessor from leasing land to lessee's competitors neither unreasonable nor illegal restraint of trade). The majority opinion errs in assuming only contracts included in those statutes are lawful restraints of trade.

Cir.1997) (quoting *Scott v. Snelling & Snelling, Inc.*, 732 F.Supp. 1034, 1042 (N.D.Cal. 1990); *Boughton*, 41 Cal.Rptr. at 716 (emphasis added)); *accord Great Frame Up Systems, Inc. v. Jazayeri Enters.*, 789 F.Supp. 253, 256 (N.D.Ill.1992) (relying on *Campbell, supra*, and noting that contracts are not invalid under § 16600 unless a party is "prevented from engaging in an *entire* profession, trade or business.") (emphasis in original).[8]

[¶ 47.] A similar agreement was held not to possess the attributes of a similar statute in *Smith, Barney, Harris Upham & Co., Inc. v. Robinson*, 12 F.3d 515 (5th Cir.1994) (per curiam). In *Smith*, an employee (Robinson) agreed not to

> directly or indirectly solicit or induce any Smith Barney employee to resign from either (a) the Smith Barney branch office at which I worked; or (b) any other Smith Barney branch office within a fifty (50) mile radius of the competitor organization's office at which I work, in order for that employee to accept employment at the competitor organization at which I work.

The majority opinion finally, and perhaps unwittingly, hits the nail on the head. Its attempts at distinguishing *Lien* and *Brookings Mall* conclude these statutes did not apply because they were realty cases. *Exactly!!* Likewise, these statutes do not apply to this contract because this is not a partnership, corporation, or employment contract. The majority opinion quotes *Lien* out of context and omits the fact that this court, after concluding these statutes did not apply, spent a substantial amount of time explaining why that contract was not a restraint of trade as defendants claimed. *See Lien*, 73 S.D. at 89, 39 N.W.2d at 485 ("Defendants ... asserted that plaintiff's contract is unlawful and void in that it is against public policy and in restraint of trade[.]"). A majority of the court held that the statutes did not apply, contrary to the opinions of the dissenting justices, and determined that the contract was not a restraint of trade according to the common law, and enforced it.

> Furthermore, *Lien* sued the lessor *and* the competitor (Northwest Engineering Co.) to whom the lessor leased land in violation of its contract with *Lien*. Even though Northwest was sued for tortious interference with contract, the court still concluded the contract was not an unlawful restraint of trade. If every contract were "unreasonably in restraint of trade" as incorrectly suggested by the majority opinion, the *Lien* contract would have been voided, rather than enforced and recovered upon.

After Robinson left Smith Barney's employ, he conceded that he knowingly breached the agreement by actively recruiting Smith Barney's employees. The district court granted Smith Barney preliminary injunctive relief, which Robinson appealed. In affirming, the Fifth Circuit could have been speaking in this case when it stated:

> We agree with Smith Barney that this Agreement does not possess the attributes of an agreement prohibited by La.R.S. 23:921.[9] Contrary to Robinson's assertions, the Agreement does not restrain Robinson from exercising a lawful profession, trade, or business. As Smith Barney maintains, the Agreement *assumes* that Robinson will exercise his profession, presumably even as a branch manager, with a competitor firm. Robinson is free to recruit stockbrokers or employees for Morgan Keegan—anywhere, any time, and from any organization—save only that small class comprising Smith Barney's employees, a class which he willingly agreed not to solicit. The district court recognized that Robinson was not restrained from exercising a lawful profession, trade, or business when it issued the preliminary injunction. The Agreement simply does not meet the definition of the kinds of contracts covered by the statute.
>
> To find that the narrowly tailored Agreement falls within the ambit of the statute, we would have to conclude not only that recruiting is an indispensable ingredient of Robinson's profession but also that the Agreement prohibited Robinson from recruiting employees or stockbrokers to work for Morgan Keegan, which it clearly does not do. Smith Barney did not generally restrain Robinson from recruiting employees for Morgan Keegan. Instead, Smith Barney microscopically focused the Agreement at that aspect of Robinson's job that would be most damaging to Smith Barney—Robinson's recruitment of Smith Barney's employees to work for a competitor organization. Contrary to Robinson's hyperbole, that restriction does not prevent him from performing one of his "primary responsibilities" as a branch manager for a competitor organization, i.e., recruiting stockbrokers. We note in passing that subsection (C) of La. R.S. 23:921 [10] mentions engaging in a similar business and soliciting *customers* but never mentions soliciting fellow employees. We consider this an implicit legislative recognition that, without more, a narrowly tailored covenant not to solicit employees of the employer is not among the kinds of agreements covered by the statute. We therefore conclude that the Agreement is not governed by La.R.S. 23:921.

*Id.* at 519 (emphasis in original).

[¶ 48.] Likewise, in this case we would have to conclude not only that recruitment is an indispensable ingredient of Gateway's business, which it *clearly* is not, but also that the agreement prohibited Gateway from recruiting employees or computer programming consultants to work for Gateway, which it *clearly* does not do. The parties' contract does not require Gateway to cease operations of its "profession, trade, or business." As stated by the majority opinion, Gateway's "business" is computer sales and service.

[¶ 49.] The majority opinion states that it is up to the Legislature to set public policy and that it would have to create another exception in order for this agreement to be permissible. I disagree, because this agreement does not contravene the policy underlying SDCL 53-9-8. The Alabama Supreme Court

---

9. The Louisiana statute provides in part:

   A. Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.

10. This subsection provides in part:

   C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

(the only authority relied upon in the majority opinion), stated:

> [The statute] expresses the public policy of Alabama disfavoring contracts in restraint of trade; such contracts are disfavored because they tend not only to deprive the public of efficient service but also to impoverish the individual.

*Construction Materials, Ltd., Inc. v. Kirkpatrick Concrete, Inc.*, 631 So.2d 1006, 1009 (Ala.1994) (citation & internal quotation omitted). Here, neither the public nor Gateway is deprived of efficient service and Gateway certainly would not be "impoverished" by its promise not to solicit CTS employees for one year.

[¶ 50.] In *Central Monitoring Service, Inc. v. Zakinski*, 1996 SD 116, ¶ 33, 553 N.W.2d 513, 518, we adopted the Restatement (Second) of Contracts § 188 criteria to determine whether an agreement is unreasonably in restraint of trade:

> (1) A promise to refrain from competition that imposes a restraint that is ancillary to an otherwise valid transaction or relationship is unreasonably in restraint of trade if
>
> > (a) the restraint is greater than is needed to protect the promisee's legitimate interest, or
> >
> > (b) the promisee's need is outweighed by the hardship to the promisor and the likely injury to the public.

### Extent of Restraint

[¶ 51.] Gateway argues that the restraint is greater than required to protect CTS because the agreement encompasses every CTS employee and therefore, it claims, "unlawfully interferes with [their] rights to choose their employment." However, the employees of CTS are not parties to this contract.

[N]o case has been cited in which a person not a party to the contract at issue has been successful in asserting [the restraint of trade statute] as a bar to the validity of the contract. [That statute] and the cases decided under it indicate that it applies only to a situation where there is a direct restraint imposed on a party to the contract preventing him from exercising a lawful profession, trade, or business.

*Dyson Conveyor Maintenance, Inc. v. Young & Vann Supply Co.*, 529 So.2d 212, 216 (Ala. 1988) (Torbert, C.J., dissenting).[11]

[¶ 52.] Gateway also argues that the restraint is greater than required to protect CTS since the agreement provides no territorial restriction. *But see Ward v. Midcom, Inc.*, 1998 SD 10, ¶ 14, 575 N.W.2d 233, 238 (limiting a noncompete agreement to Codington County and stating, "[t]he provisions of such contracts should be construed in the light of the surrounding circumstances, and ... the intent of the parties should be carried out, if such intent is one which the law sanctions.") (citation omitted).

[¶ 53.] I submit that this agreement could be limited to those places where CTS provides programming services to Gateway and to those employees in contact with Gateway, but this agreement is not against public policy and it is not unreasonably in restraint of trade.

### Hardship to Gateway and the Public

[¶ 54.] As noted, this agreement does not impose an undue hardship on Gateway. Gateway is free to carry on its computer business and hire any computer programmer in the entire world, so long as it does not hire a CTS programmer for the relatively short period of one year. Nor does this agreement impose an undue hardship on the public.

---

**11.** The majority opinion errs by basing its decision on the rights of persons not party to this contract. *See* ¶¶ 13 & 17. The benefits and burdens of contracts are analyzed from the viewpoint of the *parties*. A contract which precludes a former employee from recruiting a former coworker obviously restrains the latter from employment with the former. That fact does not violate public policy and is not the basis for invalidation of the contract. *See, e.g., Smith*, 12 F.3d at 519; *Loral*, 219 Cal.Rptr. at 840. The fact that some outsider to the contract may be incidentally affected has no bearing in an action for breach of contract. *Cf. Pittsburgh Plate Glass Co. v. Paine & Nixon Co.*, 182 Minn. 159, 234 N.W. 453, 455 (1931):

> [A] contract may incidentally restrain competition or trade without violating the statute if its chief purpose is to promote and increase the business of those who enter into it, and if it is not injurious to the public interests.

Gateway's ability to produce computers will not be affected by its inability to hire CTS programmers for a limited period of time.[12]

[¶ 55.] As stated in *Lien,* 73 S.D. at 93, 39 N.W.2d at 488:

> If the restriction imposed was not greater than protection to the covenantee required and was compatible with the public interest, it *cannot* be deemed a contract in restraint of trade.

(Emphasis added); *see also* 17 C.J.S. *Contracts* § 238, at 1107 (1963):

> Public policy favors competition and opposes restraints on trade when the public welfare is injuriously affected; but before parties will be absolved from their solemn obligations on this ground, it must be shown that their agreements are manifestly injurious to the public welfare, since it is also the policy of the law to hold persons to their contracts.

[¶ 56.] Not every contract is *unreasonably* in restraint of trade; if a contract is challenged on that basis, then whether it falls into one of the legislatively created exceptions of SDCL 53–9–9 to –11, while relevant, is *not* dispositive. *See Lien,* 73 S.D. at 92, 39 N.W.2d at 487:

> [Forerunner to SDCL 53–9–8] did not introduce a new principle of law, but it simply eliminates from the controversy the question of reasonableness where a case falls within one of the exceptions.

If, as here, the contract is not addressed by one of the exceptions, then reasonableness is the question. *Id.,* 39 N.W.2d at 488 (a contract will be sustained to the extent it is reasonable to the public and the parties).

## CONCLUSION

[¶ 57.] In light of the foregoing, it is clear that this agreement does not constitute a restraint on trade, unreasonable or otherwise. It is actually an agreement in *furtherance* of trade, borne of CTS' natural desire to protect its own business interests while serving those of Gateway. It does not restrict Gateway's ability to pursue its business and does not violate the letter or the spirit of SDCL 53–9–8. Accordingly, we should reverse the trial court's order granting summary judgment to Gateway and remand for trial.

[¶ 58.] KONENKAMP, J., joins this dissent.

---

12. Despite Chief Justice Miller's "deep concerns," he concludes:
> ... I cannot ignore the impact that this contract has on Densmore ... there is no way to enforce the contract as between Gateway and CTS, but not between CTS and Densmore[.]

This conclusion is defective for at least three reasons.

1) Chief Justice Miller's "deep concerns" can easily be alleviated. The contract between Gateway and CTS may be enforced without any effect whatsoever on Densmore. Simply subject Gateway to liability for damages in accordance with the pleadings. Gateway may hire whomever it pleases, but if it promises and contracts not to hire CTS employees, it should be held to respond in damages when it breaks that promise and breaches that contract.

2) Densmore is not even a party to this contract. How in the world, and under what authority, can a court base its decision on perceived repercussions to a non-party to this contract?

3) How do you ignore the California authority cited in the dissent and instead rely on California Supreme Court cases dated 1894, 1899, and 1937? This state based its restraint of trade statutes on the California model. California routinely upholds identical agreements and has done so in cases dated in this century, as recently as 1985 in the state courts (*Loral,* 219 Cal.Rptr. 836), and 1997 in the federal courts (*General Comm'l Packaging,* 126 F.3d 1131). As noted, California routinely validates covenants not to compete executed in conjunction with employment contracts *even though California has no employment contract exception to § 16600.* Therefore, any reliance on *Merchants' Ad–Sign Co. v. Sterling,* 124 Cal. 429, 57 P. 468 (1899), in Chief Justice Miller's writing is misplaced as it is obviously no longer good law.